Filed 5/14/18  Taswell v. The Regents of the Univ. of Cal. CA4/3

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARL TASWELL, M.D., | |
| Plaintiff and Appellant, | G053960 |
| v. | (Super. Ct. No. 30-2013-00659259) |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Reversed.

Bohm Law Group, Lawrance A. Bohm, Zane E. Hilton, Bradley J. Mancuso and Brandon P. Ortiz for Plaintiff and Appellant.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt; Dakessian Law and Zareh Jaltorossian for Defendant and Respondent.

\*          \*          \*

**INTRODUCTION**

Plaintiff Carl Taswell, M.D., who is certified in nuclear medicine, filed a complaint against the Regents of the University of California (the Regents). Taswell alleged he was retaliated against for his whistleblowing activities regarding patient safety at the brain imaging center during his employment by the University of California, Irvine (the University). Taswell appealed from the judgment entered after the trial court granted the Regents' motion for summary judgment and summary adjudication. We reverse.

We hold that, following an administrative hearing, Taswell was not required to exhaust his judicial remedies (by seeking a writ of mandamus) to challenge the University's rejection of his claims of retaliation. We also hold that, after exhausting his administrative remedies, Taswell was statutorily authorized to file this civil action and seek damages based on his statutory whistleblower retaliation claims; the administrative decision has no res judicata or collateral estoppel effect on this action.

Also, a triable issue of material fact exists as to whether the University's decisions to place Taswell on an investigatory leave of absence and to not renew his contract had a causal connection to Taswell's whistleblowing activities. Therefore, summary judgment and/or summary adjudication should not have been granted on the theory that no triable issue of fact existed.

**FACTS**[1]

Taswell is a licensed medical doctor who is board certified in nuclear medicine. In December 2011, Dr. Scott Goodwin, the chair of the radiology department at the University's medical school, offered Taswell the position of nuclear medicine physician or authorized user at the school's brain imaging center, with the "explicit understanding that [he] would be granted a clinical professorship in order to be

---

[1] This section summarizes evidence referenced in the parties' separate statements and contained in Taswell's declaration in opposition to the motion for summary judgment.

successful;" Goodwin presented Taswell with a memorandum of understanding memorializing their agreement. Taswell was hired as a non-Senate academic appointee for a six-month period.

Shortly before Taswell began work for the University, Goodwin informed him that he would be starting as a "specialist" before the clinical professorship could be processed. Taswell had reservations about starting work for the University "before the clinical professorship could be implemented," but Goodwin assured Taswell he "had [his] back" and would "protect [him] from any blowback."

On January 2, 2012, Taswell began working in the authorized user position. As an authorized user, Taswell had significant radiation safety responsibilities mandated by state and federal law. That position involved being responsible for and having control over the quality, safety, and technical and medical aspects of the imaging procedures performed at the brain imaging center. The position required working with the campus and hospital radiation safety committees, the campus environment health and safety department, radiation safety officers, and others to ensure the safe operation of the brain imaging center, that the center was "properly documented," and that the center met government standards.

In early February 2012, radiochemist Dr. Farhad Karimi, who had recently joined the brain imaging center, provided information to the University's medical school about potential safety and compliance problems at the brain imaging center. On February 9, the radiochemistry laboratory of the brain imaging center was closed; it remained closed as of the date the motion for summary judgment was filed. On February 16, Karimi provided information about the problems at the brain imaging center to "high-ranking officials" at the University and the medical school.

On February 17, Karimi told Taswell of the potential safety and compliance problems at the brain imaging center. Taswell called Goodwin later that evening and informed him of what he had been told by Karimi. On February 19, Taswell reported the

same issues to the UC whistleblower hotline and on February 22, he met with Michael Arias, the University's associate executive vice chancellor and the local designated official responsible for receiving whistleblower complaints. Arias told Taswell that investigations would begin and that Taswell should keep the allegations confidential and not investigate them himself.

On March 15, 2012, Taswell spoke at the University's radiation safety committee's regular monthly meeting about the allegations. In an e-mail dated the morning of March 16, radiation safety officer Barbara Hamrick informed Goodwin that during the radiation safety committee meeting, Taswell had expressed his concern about the operation of the brain imaging center and that he felt patient safety had been compromised. She stated Taswell "became visibly agitated" at the meeting.

On March 16, Taswell reported his concerns regarding "serious violations" at the brain imaging center to the California Department of Public Health. On March 19, he reported his concerns to the United States Food and Drug Administration, Department of Health and Human Services.

On March 20, Taswell told Goodwin that he had informed state and federal authorities about the problems at the brain imaging center. While Goodwin did not appear to be angry with Taswell, he remarked "this makes me look bad."

On March 22, Taswell, along with three other University employees who had campus radiation-safety responsibilities, entered Dr. Jogeshwar Mukherjee's radiochemistry laboratory near, but not part of, the brain imaging center. Taswell took pictures of what he perceived to be safety violations. A researcher in the laboratory became angry, questioning whether the group, including Taswell, was authorized to enter the laboratory. Taswell believed he was authorized to inspect the laboratory because his job duties included conducting inspections, he had been invited by the radiation safety committee to enter the laboratory, and an inspection was particularly appropriate given

4

that the brain imaging center was scheduled to reopen without remediating the dangerous conditions.

On April 2, Goodwin and another official informed Taswell that he was being placed on a paid leave of absence for entering Mukherjee's laboratory without authorization, pending an investigation. (In May 2012, the University retained a law firm to conduct an independent investigation to determine whether Taswell's entry into the laboratory was authorized. The law firm concluded that because Taswell was with other employees who had authority to enter the laboratory, his entry was not unauthorized.)

Also on April 2, Taswell was informed that his contract as an authorized user would not be renewed as of June 30, 2012. Goodwin testified that while the "straw that broke the camel's back" may have been Taswell's entry into Mukherjee's laboratory (whether or not authorized), Taswell's contract would not have been renewed anyway. Goodwin had been in favor of Taswell's appointment as of March 15, but changed his mind between March 15 and 16. (During that period of time, Goodwin had been informed that Taswell had provided information to the radiation safety committee.) Goodwin stated that the reasons for deciding to "non-renew" Taswell were Taswell's refusal to do his job, interpersonal issues, behavior at the March 15 meeting with the radiation safety committee meeting, and unauthorized entrance into the laboratory.

In April 2012, Taswell filed an internal complaint for whistleblower retaliation, alleging the decisions to place him on investigatory leave and not to renew his contract constituted retaliation for his whistleblowing activities. He also initiated a grievance procedure pursuant to the University's Academic Personnel Manual.

The grievance procedure culminates in a Step III formal grievance appeal hearing. At that hearing, the grievant is represented by counsel and is permitted to present his or her case by oral and documentary evidence. The introduction of rebuttal evidence and the cross-examination of witnesses are permitted, and the hearing is either

5

transcribed or recorded. Following the hearing, the hearing officer is required to provide the parties a written statement of his or her findings and recommendations.

Dr. Kenneth Janda, the University's dean of the school of physical sciences, was the Step III hearing officer for Taswell's grievance proceedings. He concluded the University did not retaliate against Taswell because of his whistleblower activities and that the University would not have renewed Taswell's contract even if he had not engaged in such activities. As reasons for the actions taken by the University, Janda cited what he described as emotional communications by Taswell suggesting he would not approve protocols proposed by a certain faculty member, Taswell's failure to follow Arias's admonition to refrain from investigating the safety allegations himself, and Taswell's "behavior" in the March 15 meeting with the radiation safety committee.

On April 22, 2013, the University's vice-provost for academic personnel approved Janda's decision denying Taswell's grievance (the administrative decision). Taswell did not file a petition seeking a writ of mandamus to challenge the administrative decision, but filed the instant action instead. It is undisputed Taswell exhausted the University's administrative grievance process.

## PROCEDURAL HISTORY

At the time the Regents filed their motion for summary judgment, the following four claims contained in Taswell's fourth amended complaint for damages remained in the case: (1) violation of the California Whistleblower Protection Act, Government Code, section 8547 et seq.; (2) whistleblower retaliation in violation of Health and Safety Code section 1278.5; (3) whistleblower retaliation in violation of Labor Code section 1102.5, subdivisions (a) through (c); and (4) retaliation in violation

6

of the California False Claims Act, Government Code section 12653, subdivisions (a) through (b).[2]

The Regents filed a motion for summary judgment or, in the alternative, for summary adjudication of issues on the ground no triable issues of material fact existed. The motion also sought, in the alternative, summary adjudication of issues deciding whether each of Taswell's claims was barred because he failed to exhaust his judicial remedies by filing a writ petition to challenge the University's administrative decision, by operation of the res judicata and/or collateral estoppel doctrines in relation to that administrative decision, and because each claim "ha[d] no merit."

The trial court granted the Regents' motion for summary judgment "in its entirety" and granted summary adjudication of issues, on the grounds that Taswell's retaliation claims were barred by res judicata and/or collateral estoppel, and because Taswell failed to exhaust judicial remedies. Judgment was entered in favor of the Regents. Taswell appealed.

## DISCUSSION

### I.

### STANDARD OF REVIEW

"We review orders granting summary judgment or summary adjudication de novo. [Citations.] A motion for summary judgment or summary adjudication is properly granted if the moving papers establish there is no triable issue of material fact

---

[2] In addition to the retaliation claims, the fourth amended complaint originally contained a claim under the Private Attorneys General Act, Labor Code section 2699 et seq. against the Regents, and claims for intentional and negligent infliction of emotional distress and defamation; these claims were dismissed before the motion for summary judgment was filed. Some of the claims in the fourth amended complaint were alleged against Arias as well as the Regents; Arias was no longer a defendant in the case at the time the motion for summary judgment was filed.

and the moving party is entitled to judgment as a matter of law." (*Mooney v. County of Orange* (2013) 212 Cal.App.4th 865, 872.) "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .""" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) We """liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

II.

SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED ON THE GROUND TASWELL FAILED TO EXHAUST JUDICIAL REMEDIES OR BECAUSE THE ADMINISTRATIVE DECISION HAD PRECLUSIVE EFFECT ON TASWELL'S STATUTORY RETALIATION CLAIMS.

The Regents argued in the trial court and on appeal that the administrative decision constituted a binding adjudication entitled to preclusive effect in a subsequent judicial proceeding and thus summary judgment and adjudication as to all of Taswell's retaliation claims were properly entered in their favor. After we review California Supreme Court authority addressing the preclusive effect of administrative decisions on subsequent judicial actions *post*, we will address each of Taswell's statutory claims. We conclude that none of Taswell's claims is barred for failure to exhaust judicial remedies or because the administrative decision had preclusive effect as to those claims.

8

## A.

SUMMARY OF APPLICABLE LEGAL PRINCIPLES GOVERNING THE PRECLUSIVE EFFECT OF ADMINISTRATIVE FINDINGS AND DECISION ON A SUBSEQUENT JUDICIAL ACTION.

We begin with the general rule regarding the preclusive effect of administration decisions on subsequent judicial actions: "Under the doctrine of exhaustion of judicial remedies, '[o]nce a[n administrative] decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. [Citation.] Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims. [Citation.]' [Citation.] Generally speaking, if a complainant fails to overturn an adverse administrative decision by writ of mandate, 'and if the administrative proceeding possessed the requisite judicial character [citation], the administrative decision is binding in a later civil action brought in superior court.'" (*Runyon v. Board of Trustees of California State University* (2010) 48 Cal.4th 760, 773 (*Runyon*).)

The Supreme Court has explained: "An administrative finding will *not* be given preclusive effect in a later judicial proceeding, however, ""'if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged.'"" (*Runyon, supra,* 48 Cal.4th at p. 774, italics added.)

## B.

GOVERNMENT CODE SECTIONS 8547.8 (GOVERNING STATE AGENCY EMPLOYEES) AND 8547.12 (APPLICABLE TO CALIFORNIA STATE UNIVERSITY EMPLOYEES) REFLECT A LEGISLATIVE INTENT THAT AN ADMINISTRATIVE FINDING ON RETALIATION ISSUES NOT BE GIVEN PRECLUSIVE EFFECT IN A LATER JUDICIAL PROCEEDING.

In 1993, the Legislature enacted what is now called the California Whistleblower Protection Act (the Act), codifying it as Government Code sections 8547

9

through 8547.11.  (Gov. Code, § 8547; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 885 (*Miklosy*).)  The Act's "stated purpose was to encourage the disclosure of 'improper governmental activities,'" but "[i]n 1999, the Legislature extended the Act to cover disclosures of health and safety problems."  (*Miklosy, supra,* 44 Cal.4th at p. 885.)  The Act "has dealt with employees of the state and the University in separate provisions."  (*Miklosy, supra,* at p. 885; see, e.g., Gov. Code, § 8547.8 [protects state employees against whistleblower retaliation]; § 8547.10 [protects employees of the University of California system from whistleblower retaliation]; § 8547.12 [protects employees of the California State University system from whistleblower retaliation].)

In *State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963 (*Arbuckle*), the Supreme Court concluded the Legislature intended that an administrative finding not be given preclusive effect in a subsequent civil lawsuit involving a whistleblower retaliation claim alleged by a state agency employee under Government Code section 8547.8.[3]  As later explained by the court in *Runyon*, the *Arbuckle* court "held the language of section 8547.8, subdivision (c), authorizing a damages action by a state agency employee once the State Personnel Board had reached a decision on the employee's whistleblower claim, left no room for a requirement of judicial exhaustion.  'The bareness of this statutory language suggests that the Legislature

_____

[3]  Government Code section 8547.8, subdivision (c) provides:  "In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee or applicant for state employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party.  Punitive damages may be awarded by the court where the acts of the offending party are proven to be malicious.  Where liability has been established, the injured party shall also be entitled to reasonable attorney's fees as provided by law.  However, *any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a), and the board has issued, or failed to issue, findings pursuant to Section 19683*."  (Italics added.)

10

did not intend the State Personnel Board's findings to have a preclusive effect against the complaining employee.'"  (*Runyon, supra,* 48 Cal.4th at p. 774.)

In *Runyon, supra,* 48 Cal.4th 760, the Supreme Court similarly found that the Legislature intended that an employee of the California State University system (CSU) be permitted to file a lawsuit claiming whistleblower retaliation under Government Code section 8547.12, subdivision (c) (applicable to CSU employees)[4] following an administrative hearing and adverse decision.  The Supreme Court stated: "Like the parallel provision addressed in *Arbuckle*, section 8547.12, subdivision (c) authorizes a damages action by an alleged whistleblower whenever the employee has exhausted his or her internal remedies by filing an internal complaint with CSU and CSU has reached an adverse decision, i.e., has failed to 'satisfactorily address' the employee's complaint."  (*Runyon, supra,* 48 Cal.4th at p. 774.)

The Supreme Court explained that an employee claiming retaliation under Government Code section 8547.12, subdivision (c) was not required to exhaust his or her judicial remedies by challenging the administrative decision by way of a petition for a writ of mandate:  "As in section 8547.8, the Legislature 'expressly acknowledged the existence of the parallel administrative remedy' yet 'did not require that the

---

[4]  Government Code section 8547.12, subdivision (c) provides:  "In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a university employee, including an officer or faculty member, or applicant for employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party.  Punitive damages may be awarded by the court where the acts of the offending party are proven to be malicious.  Where liability has been established, the injured party shall also be entitled to reasonable attorney's fees as provided by law. However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the university officer identified pursuant to subdivision (a), and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the trustees.  *Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months*."  (Italics added.)

11

[administrative] findings be set aside by way of a mandate action . . . .' [Citation.] As in *Arbuckle*, then, to hold an adverse administrative finding preclusive in the expressly authorized damages action would be contrary to the evident legislative intent." (*Runyon, supra,* 48 Cal.4th at p. 774.)

The Supreme Court added: "Also as in *Arbuckle*, giving CSU's adverse decision preclusive effect would unduly restrict the civil remedy expressly provided for in section 8547.12. Writ review, whether through administrative mandate (Code Civ. Proc., § 1094.5) or ordinary mandate (*id.*, § 1085), gives substantial deference to the agency's findings. Requiring the employee to overturn CSU's adverse decision by writ before bringing a civil action would mean that 'in nearly every case, an adverse decision from [CSU] would leave the employee without the benefit of the damages remedy set forth in [section 8547.12, subdivision (c)].' [Citation.] As we explained: 'Nothing in [the Act] suggests that the Legislature intended the damages remedy created in that provision to be so narrowly circumscribed, and such a narrow interpretation of the damages remedy would hardly serve the Legislature's purpose of protecting the right of state employees "to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution."'" (*Runyon, supra,* 48 Cal.4th at p. 774.)

The Supreme Court rejected the argument that interpreting both sections 8547.8 and 8547.12 as requiring that an employee submit his or her complaint to what is essentially a *nonbinding* administrative investigative procedure was irrational or particularly unusual. (*Runyon, supra,* 48 Cal.4th at pp. 774-775.) The court stated: "Even if it does not produce a judicially binding determination, CSU's internal investigation of a whistleblower complaint, like that of the State Personnel Board under section 8547.8, is more likely to promote early and less costly resolution of complaints than permitting an alleged whistleblower to bring a damages action without exhausting administrative remedies." (*Id.* at p. 775.)

12

C.

TASWELL'S CLAIM FOR RETALIATION IN VIOLATION OF GOVERNMENT CODE SECTION 8547.10, SUBDIVISION (C) IS NOT BARRED BY A FAILURE TO EXHAUST JUDICIAL REMEDIES, OR BY APPLICATION OF THE RES JUDICATA OR COLLATERAL ESTOPPEL DOCTRINES.

Taswell's first cause of action was for retaliation in violation of Government Code section 8547.10, a statute that, along with sections 8547.8 and 8547.12 discussed *ante*, is part of the Act.

i.

*The applicable version of Government Code section 8547.10, subdivision (c)*

Government Code section 8547.10, subdivision (a) provides: "A University of California employee, including an officer or faculty member, or applicant for employment may file a written complaint with his or her supervisor or manager, or with any other university officer designated for that purpose by the regents, alleging actual or attempted acts of . . . retaliation . . . for having made a protected disclosure, together with a sworn statement that the contents of the written complaint are true, or are believed by the affiant to be true, under penalty of perjury. The complaint shall be filed within 12 months of the most recent act of reprisal complained about."

In 2010, before Taswell began working for the Regents, subdivision (c) of section 8547.10 was amended and now reads: "In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a university employee, including an officer or faculty member, or applicant for employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party. Punitive damages may be awarded by the court where the acts of the offending party are proven to be malicious. Where liability has been established, the injured party shall also be entitled to reasonable attorney's fees as provided by law. However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint

13

with the university officer identified pursuant to subdivision (a), and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents. *Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months*." (Italics added.)

The 2010 amendment added the final sentence of subdivision (c), italicized *ante*, which allows a complainant to seek a remedy "if the university has not satisfactorily addressed the complaint." As amended, the relevant language of subdivision (c) of section 8547.10, governing employees of the University of California, is now identical to the language of subdivision (c) of section 8547.12, governing CSU employees.

ii.

*The phrase "not satisfactorily addressed the complaint" means the complaint was not addressed to the complainant employee's satisfaction.*

In *Runyon, supra,* 48 Cal.4th at page 768, the California Supreme Court interpreted the phrase "has not satisfactorily addressed the complaint" in the context of Government Code section 8547.12, subdivision (c). The court concluded the "most natural reading of the sentence is that the complainant may bring an action for damages if CSU does not, within 18 months, address the complaint to his or her satisfaction." (*Runyon, supra,* at p. 768.)

The Supreme Court rejected the defendants' argument that "the entity to be satisfied" in that phrase "is a court presented with a mandate petition" in which the complainant must "convince the court CSU acted in bad faith or in a 'slipshod' manner" in investigating the complaint. (*Runyon, supra,* 48 Cal.4th at p. 768.) The Supreme Court concluded that "interpretation is not one that can be naturally drawn from the statute itself." (*Ibid.*)

The Supreme Court assured the defendants that the availability of a civil action would not allow a complainant to overturn an administrative decision at will: "A

14

CSU employee cannot obtain relief in a civil action merely by 'assert[ing] that he is unhappy with the decision' of CSU on the administrative complaint, as *Ohton*[ *v. Board of Trustees of California State University* (2007)] 148 Cal.App.4th [749] at page 765, maintains.  Rather, the dissatisfied employee simply has the opportunity of *proving*, in court, all the elements of a cause of action under section 8547.12, subdivision (c).  Moreover, like section 8547.8, subdivision (c), . . . section 8547.12 'authorizes, not an action to *review* the decision of the [administrative decision maker], but a *completely separate* damages action in the superior court in which the employee will enjoy all the procedural guarantees and independent factfinding that generally accompany such actions.' [Citation.]  Thus, even if the employee proves a case of retaliation for whistleblowing and obtains damages in the civil action, that result does not 'overturn' CSU's administrative decision . . . ; it is a completely separate remedy authorized by statute." (*Runyon, supra,* 48 Cal.4th at p. 769.)

The Supreme Court further stated that "[t]o the extent any ambiguity remains after reading the language in its statutory context, the legislative history resolves it in favor of plaintiff's interpretation." (*Runyon, supra,* at p. 770.)  After summarizing the relevant legislative history, the court concluded:  "The history thus tends to confirm our reading of 'satisfactorily addressed' as referring to the satisfaction of the complainant." (*Id.* at p. 773.)  The court held:  "We conclude that under section 8547.12, subdivision (c), a CSU employee who has complied with CSU's internal complaint and investigation requirements and received an adverse decision from CSU may bring a civil action for damages against those allegedly responsible for unlawful retaliation." (*Id.* at p. 775.)[5]

---

[5]  The Supreme Court disapproved of *Ohton v. Board of Trustees of California State University, supra,* 148 Cal.App.4th 749, "to the extent it holds otherwise." (*Runyon, supra,* 48 Cal.4th at p. 775.)

iii.

*Applying the Supreme Court's interpretation of language found in section 8547.12, subdivision (c) that is identical to that found in section 8547.10, subdivision (c), summary adjudication should not have been granted as to Taswell's section 8547.10 claim.*

The Supreme Court's interpretation of the last sentence of section 8547.12, subdivision (c), and in particular, the phrase "satisfactorily addressed the complaint," applies equally to the identical sentence contained in the parallel statute, section 8547.10, subdivision (c). Therefore, following the administrative decision denying his complaint that he had been retaliated against for whistleblowing—resulting in his complaint not being satisfactorily addressed from his perspective—Taswell was statutorily authorized to file a retaliation claim for violation of section 8547.10 in the trial court. Given the Legislature's intent to permit such a lawsuit, Taswell was not required to exhaust judicial remedies and challenge the administrative decision by filing a petition for a writ of mandamus. Furthermore, his claim was neither limited by the administrative decision nor otherwise barred by the doctrines of res judicata or collateral estoppel. (See *Runyon, supra,* 48 Cal.4th at p. 774 ["[a]n administrative finding will not be given preclusive effect in a later judicial proceeding . . . ""if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged'""].) Consequently, the trial court erred by granting summary adjudication as to this claim on the ground either that Taswell failed to exhaust judicial remedies or that it is barred by res judicata and/or collateral estoppel.

iv.

*The Regents' arguments that summary adjudication was properly granted as to this claim are without merit.*

In moving for summary adjudication, the Regents cited *Miklosy, supra,* 44 Cal.4th 876, a case interpreting section 8547.10, in support of their argument the administrative decision constituted a binding adjudication entitled to preclusive effect in a subsequent judicial proceeding. As explained by the Supreme Court in *Fahlen v. Sutter*

16

*Central Valley Hospitals* (2014) 58 Cal.4th 655, 674, footnote 9 (*Fahlen*), *Miklosy* interpreted a prior version of section 8547.10, subdivision (c): "In *Miklosy, supra,* 44 Cal.4th 876, we noted, we had addressed Government Code section 8547.10(c), specifically applicable to the UC system. As then in effect, section 8547.10(c) provided that a UC employee who claimed whistleblower retaliation could sue only if he or she had filed an administrative complaint with the university, and UC '[had] failed to reach a decision regarding that complaint within the time limits established for that purpose by the [R]egents.' [Citation.] Section 8547.10(c), unlike Government Code section 8547.12(c), did not then contain a further proviso that a suit was allowed if UC had not 'satisfactorily addressed' the complaint within a specified time. In *Miklosy, supra,* 44 Cal.4th 876, we found that the plain language of section 8547.10(c) barred a whistleblower damage action against UC if the university had reached *any* decision on an employee's administrative complaint, whether favorable or adverse to the employee, within the time limits established by the university. Our *Miklosy* opinion noted the absence from section 8547.10(c) of the 'satisfactorily addressed' language included in section 8547.12(c), and expressly left open whether the presence of such language in section 8547.10(c) would have altered our interpretation of that statute. [Citation.] In the wake of *Miklosy*, the Legislature amended section 8547.10(c) to add the 'satisfactorily addressed' language."

Taswell began to work for the University in January 2012 and thus *Miklosy's* analysis regarding its interpretation of the pre-2010 amendment version of Government Code section 8547.10, subdivision (c) is inapplicable in this case.

In their appellate brief, the Regents argue that "[Taswell]'s position that the University's decision has no preclusive effect under section 8547.10 is untenable under the California Constitution." The Regents cite in support of their argument *Miklosy's* discussion of the University of California's origin in the California Constitution. The Supreme Court in *Miklosy* did not conclude the Legislature would be constitutionally

17

precluded from authorizing an employee to file a whistleblower retaliation claim for damages against the Regents. Instead, the Supreme Court observed that the University of California's "unique constitutional status" might explain why "the Legislature would take a deferential approach when authorizing damages actions against the University" and not include the final sentence of Government Code section 8547.12, subdivision (c) authorizing civil actions in the former version of section 8547.10, subdivision (c). (*Miklosy, supra,* 44 Cal.4th at p. 889.) As discussed *ante*, in 2010, the Legislature amended section 8547.10, subdivision (c) to authorize such actions.

D.

TASWELL'S CLAIM FOR RETALIATION IN VIOLATION OF HEALTH AND SAFETY CODE SECTION 1278.5 IS NOT BARRED BY A FAILURE TO EXHAUST JUDICIAL REMEDIES, OR BY APPLICATION OF THE RES JUDICATA DOCTRINE.

Taswell also asserts a cause of action for retaliation in violation of Health and Safety Code section 1278.5, which provides in part: "(a) The Legislature finds and declares that it is the public policy of the State of California to encourage patients, nurses, members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions. The Legislature encourages this reporting in order to protect patients and in order to assist those accreditation and government entities charged with ensuring that health care is safe. The Legislature finds and declares that whistleblower protections apply primarily to issues relating to the care, services, and conditions of a facility and are not intended to conflict with existing provisions in state and federal law relating to employee and employer relations.

"(b)(1) No health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person has done either of the following: [¶] (A) Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or

18

to any other governmental entity.  [¶] (B) Has initiated, participated, or cooperated in an investigation or administrative proceeding related to the quality of care, services, or conditions at the facility that is carried out by an entity or agency responsible for accrediting or evaluating the facility or its medical staff, or governmental entity.

"(2) No entity that owns or operates a health facility, or that owns or operates any other health facility, shall discriminate or retaliate against any person because that person has taken any actions pursuant to this subdivision.

"(3) A violation of this section shall be subject to a civil penalty of not more than twenty-five thousand dollars ($25,000).  The civil penalty shall be assessed and recovered through the same administrative process set forth in Chapter 2.4 (commencing with Section 1417) for long-term health care facilities.

"(c) Any type of discriminatory treatment of a patient by whom, or upon whose behalf, a grievance or complaint has been submitted, directly or indirectly, to a governmental entity or received by a health facility administrator within 180 days of the filing of the grievance or complaint, shall raise a rebuttable presumption that the action was taken by the health facility in retaliation for the filing of the grievance or complaint."

Health and Safety Code section 1278.5 "does not affirmatively state that these remedies may be pursued by means of a civil action, but it necessarily assumes as much when it explains certain procedures that may apply when 'the member of the medical staff . . . has filed *an action pursuant to this section*.'"  (*Fahlen, supra,* 58 Cal.4th at p. 676 [quoting subd. (h) of Health & Saf. Code, § 1278.5]; see *Shaw v. Superior Court* (2017) 2 Cal.5th 983, 996 ["section 1278.5—in subdivision (g)— authorizes an employee, a health care worker, or a member of a medical staff who has been discriminated against in violation of section 1278.5 to obtain remedies in a civil judicial action"].)

In *Fahlen, supra,* 58 Cal.4th at page 661, the California Supreme Court found that Health and Safety Code section 1278.5 "entitles the worker to prove a

19

statutory violation, and to obtain appropriate relief, in a civil suit before a judicial fact finder." The court further held that "[s]ection 1278.5 does not expressly or impliedly condition this right on a prior successful mandamus challenge to a hospital's quasi-judicial decision to restrict or terminate the whistleblower's medical staff privileges. Indeed, the statute includes terms indicating the Legislature's understanding and expectation that a medical staff member's whistleblower suit might begin and go forward while the hospital's proceedings against the physician were still pending." (*Fahlen, supra,* 58 Cal.4th at p. 661.)

The Supreme Court's reasoning in *Fahlen* continued: "Moreover, such a condition would seriously undermine the Legislature's purpose to afford a whistleblower on a hospital medical staff the right to sue. A hospital disciplinary proceeding against a member of the medical staff is ostensibly focused on concerns about the physician's professional fitness, not on redressing his or her claims of whistleblower retaliation. Indeed, plaintiff asserts here that the hospital proceeding was the very means of retaliation. By concluding, on limited mandamus review, that the administrative evidence of the physician's deficiencies was sufficient to support the hospital's decision, the mandamus court could thus entirely and permanently foreclose the physician's statutory right to litigate, in court, his or her distinct claim that whistleblower retaliation was a reason for the exclusionary effort." (*Fahlen, supra,* at p. 661.)

As is the case with Government Code sections 8547.8, 8547.10 and 8547.12, the Supreme Court has concluded that the Legislature, in enacting Health and Safety Code section 1278.5, expressly authorized a civil action for damages. (*Fahlen, supra,* at p. 661.) Therefore, to require a whistleblower complainant under that statute to exhaust judicial remedies by challenging an adverse administrative decision through a petition for a writ of mandamus "would be contrary to the evident legislative intent." (See *Runyon, supra,* 48 Cal.4th at p. 774.) The trial court, therefore, erred by granting summary adjudication on the ground Taswell was required but failed to file a petition for

20

a writ of mandamus to challenge the administrative decision.  The court further erred by granting summary adjudication on this claim on the ground the administrative decision must be given preclusive effect by operation of the res judicata doctrine.

E.

TASWELL'S CLAIMS FOR RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5 AND GOVERNMENT CODE SECTION 12653 ARE SIMILARLY NOT BARRED BY HIS FAILURE TO EXHAUST JUDICIAL REMEDIES, OR BY APPLICATION OF THE RES JUDICATA DOCTRINE.

Taswell's remaining two retaliation claims are based on Labor Code section 1102.5 and Government Code section 12653, respectively.

Labor Code section 1102.5, subdivision (b) provides:  "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

Labor Code section 1105 creates a private right of action for damages for violation of section 1102.5.  (See *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 604, fn. 9.)  Labor Code section 1106 makes section 1102.5 explicitly applicable to the University of California.  (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 330.)

21

Section 12653 of the Government Code provides:

"(a) Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of his or her employment because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action under this section or other efforts to stop one or more violations of this article.

"(b) Relief under this section shall include reinstatement with the same seniority status that the employee, contractor, or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, and where appropriate, punitive damages. The defendant shall also be required to pay litigation costs and reasonable attorneys' fees. An action under this section may be brought in the appropriate superior court of the state.

"(c) A *civil action* under this section shall not be brought more than three years after the date when the retaliation occurred." (Italics added.)

Although an employee seeking to pursue a claim for damages in court for a violation of either Labor Code section 1102.5 or Government Code section 12653 must exhaust administrative remedies before filing suit (*Campbell v. Regents of University of California, supra,* 35 Cal.4th at p. 317), the language of those statutes clearly reflects a legislative intent to permit a claim for damages in a court action. Thus, as with Government Code section 8547.10, subdivision (c), an employee seeking relief under Labor Code section 1102.5 or Government Code section 12653 is not required to exhaust judicial remedies by filing a petition for a writ for a writ of mandamus before filing a civil action, and the administrative decision resulting from the process of exhausting

22

administrative remedies does not have preclusive effect by application of the res judicata doctrine.

III.

NEITHER SUMMARY JUDGMENT NOR SUMMARY ADJUDICATION SHOULD HAVE BEEN GRANTED ON THE GROUND NO TRIABLE ISSUES OF MATERIAL FACT EXIST AS TO ANY OF TASWELL'S RETALIATION CLAIMS.

The Regents argue that although the trial court granted summary judgment on the ground Taswell failed to establish a triable issue of material fact, Taswell did not address that ground in his opening appellate brief and thus forfeited challenging that determination on appeal. In other words, the Regents argue that, notwithstanding the trial court's and the parties' focus on the question whether summary judgment or adjudication should be granted based on the exhaustion of judicial remedies, res judicata, and/or collateral estoppel doctrines,[6] a question we have answered in this opinion in the negative, the judgment should be affirmed on the ground of forfeiture.

We reject the Regents' forfeiture argument for three reasons. First, the trial court's order granting summary judgment failed to comply with section 437c, subdivision (g) of the Code of Civil Procedure which provides: "Upon the grant of a motion for summary judgment *on the ground that there is no triable issue of material fact*, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists. The court shall also state its reasons for any other determination. The court shall record its determination by court reporter or written order." (Italics added.) The key objective of section 437c, subdivision (g) of the Code of Civil Procedure is to provide "meaningful appellate review." (See *W. F. Hayward Co. v. Transamerica Ins. Co.* (1993) 16 Cal.App.4th 1101, 1111.)

---

[6] The Regents' analysis in its memorandum of points and authorities filed in the trial court of whether Taswell could establish he had been retaliated against was less than two pages and did not use the term "triable issue of fact."

23

The court's order did not comply with section 437c, subdivision (g) of the Code of Civil Procedure because it did not specifically refer to the evidence proffered in support of and/or in opposition to the motion that indicated no triable issue of material fact existed. The trial court's minute order explained that the court granted summary judgment and/or summary adjudication based on Taswell's failure to exhaust judicial remedies and by application of the doctrines of res judicata and collateral estoppel. At the end of the court's five-page, single-spaced minute order, the court stated: "Even if that were not the case, Taswell would be precluded from pursuing a civil action for damages, unless he can make a showing under Govt. Code 8547.10, which he has not done. In essence, Dr. Taswell does not get a second bite out of the apple, unless he can show the court there are triable issues of genuine fact which he has not done." The trial court signed an order, prepared by counsel, which stated the court "finds there are no triable issues of material fact as to Plaintiff's causes of action in the Fourth Amended Complaint and grants summary judgment in its entirety." The order proceeded to recite in detail the court's rulings on issues raised in the motion for summary adjudication related to res judicata, collateral estoppel, and failure to exhaust judicial remedies.

"The trial court's failure to perform this statutory duty [under Code of Civil Procedure section 437c, subdivision (g)], however, does not automatically require a reversal. [Citation.] The de novo standard for appellate review of an order granting summary judgment frequently means the lack of a proper order constitutes harmless error." (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1057.)

Here, the trial court's failure to explain its reasons and identify evidence it relied upon was prejudicial. The court's alternative basis for granting summary judgment was not clearly presented in the detail required by statute to inform Taswell of the evidentiary bases underlying the summary adjudication of each of his claims. The court's

24

failure to comply with section 437c, subdivision (g) of the Code of Civil Procedure therefore mitigates against a finding of forfeiture.

Second, Taswell did challenge the finding that no triable issue of material fact existed. He stated in his appellate brief, albeit in a context other than an analysis of his statutory retaliation claims, that he had "alleged and submitted evidence—as to create a triable issue of fact—that UC employees engaged in 'wrongful, unethical, illegal, retaliatory, and exploitative conduct', and that the UC . . . knew or should have known of their propensity to commit such conduct." He also identified evidence in his opening appellate brief's statement of facts supporting the existence of a triable issue of material fact on the causal connection between his whistleblowing activities and the adverse employment actions he experienced.

Third, in their appellate brief, the Regents analyzed the issue whether a triable issue of material fact exists as to the statutory retaliation claims. Therefore, the Regents are not prejudiced by Taswell's failure to more fully develop this issue in his appellate brief.

In sum, although Taswell should have briefed this issue in detail and was in peril of application of the forfeiture doctrine, under the circumstances of this case we decline to find Taswell forfeited this issue.

In the Regents' memorandum of points and authorities in support of the motion for summary judgment, the Regents argued that Taswell would be unable to prove any of his four statutory retaliation claims because he could not prove he was subjected to adverse employment action or that there was a causal connection between any protected activity on his part and an adverse employment action. The Regents did not produce any individualized analysis for each claim.

It is undisputed that Taswell was placed on paid leave pending investigation of whether his entry into the laboratory was unauthorized and, that same day, he was informed his contract with the University would not be renewed. Both

25

actions constitute adverse employment actions. (See *Whitehall v. County of San Bernardino* (2017) 17 Cal.App.5th 352, 366-367 ["an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable" and can include being placed on administrative leave].)

Furthermore, a triable issue of fact existed regarding whether a causal connection could be drawn between Taswell's whistleblowing activities and the adverse employment actions he faced. Retaliation may be proven by circumstantial evidence. (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138 [involving a claim under Labor Code section 1102.5].) This includes the temporal proximity between a protected disclosure of information and adverse treatment. (See *id.* at pp. 140-141 [based on employer's "sudden change of position" toward employee after disclosure, a jury could infer the proffered reasons for termination were pretextual].)

The Regents argue that because they articulated legitimate business reasons for placing Taswell on leave and refusing to renew his contract, namely that Taswell disregarded instructions not to conduct his own investigation, was difficult to work with, and entered the laboratory without authority, the burden shifted to Taswell to produce evidence that the Regents' proffered reasons for taking those actions were pretextual.

The record contains evidence supporting a finding of pretext sufficient to create a triable issue of material fact, including: (1) Taswell's protected activity in his disclosures to the University and to federal and state authorities that occurred in mid-February through March; (2) on April 2, he was placed on leave and informed his contract would not be renewed; (3) one of the University's reasons for taking these actions was that Taswell refused to do his job but Taswell produced evidence he tried to perform his job duties and was prevented from doing so; (4) another reason offered for the Regents taking these actions was that Taswell had refused to cease investigating the problems at the brain imaging center but evidence showed Goodwin told Taswell to continue to look out for the safety of the community; (5) after the University's

26

independent investigator found Taswell had not entered Mukherjee's laboratory without authority, Taswell was not reinstated; (6) evidence that Taswell had interpersonal issues was challenged by evidence that he had behaved appropriately and further by evidence that others were employed by the University who were known to be challenging to work with; and (7) Goodwin stated that he had been in favor of Taswell's appointment as a clinical professor but changed his mind and decided to not renew his contract sometime between March 15 and 16, and it was on March 16 that Hamrick sent Goodwin an e-mail informing him about Taswell's report of safety violations to the radiation safety committee at its monthly meeting.

Summary judgment and summary adjudication, therefore, should not have been granted because a triable issue of material fact exists regarding whether Taswell suffered actionable retaliation.


## DISPOSITION

The judgment is reversed. Appellant shall recover costs on appeal.



FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.

27