Filed 10/25/2019

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

MAGIC CARPET RIDE LLC et al.,

    Plaintiffs and Respondents,

        v.

RUGGER INVESTMENT GROUP,
L.L.C.,

    Defendant and Appellant.

G056896

(Super. Ct. No. 30-2016-00877830)

O P I N I O N

        Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge. Reversed and remanded.

        Van Riper Law and David A. Van Riper for Defendant and Appellant.

        Scott Sayre for Plaintiffs and Respondents.

\*        \*        \*

# INTRODUCTION

Defendant and Appellant Rugger Investment Group LLC (Rugger) entered into a contract to sell an airplane to Plaintiffs and Respondents Magic Carpet Ride, LLC (MCR) and Kevin T. Jennings. Rugger deposited a lien release into escrow eight days after the expiration of a 90-day period in which it was required to do so. The trial court found Rugger could not claim substantial performance because it had violated the plain language of the contract. For that reason, the court granted the motion of MCR and Jennings for summary adjudication of their breach of contract cause of action and for summary adjudication of Rugger's rescission and breach of contract causes of action. Voluntary dismissal of other causes of action produced an appealable final judgment.

We reverse and remand. Whether Rugger substantially performed its contract obligations is a triable issue of material fact that defeats summary adjudication. We hold that a provision in the parties' contract making time of the essence does not automatically make Rugger's untimely performance a breach of contract because there are triable issues regarding the scope of that provision and whether its enforcement would result in a forfeiture to Rugger and a windfall to MCR.

# FACTS

In September 2015, Jennings and Rugger entered into a purchase and sale agreement (the Agreement) by which Jennings agreed to purchase from Rugger an aircraft, identified as a pre-owned 2000 JetProp DLX Conversion of 1989 Malibu JetProp (the Aircraft). The purchase price was $610,000. Jennings made a $50,000 down payment. Jetstream Escrow & Title Service, Inc. was the escrow agent for the transaction. Paragraph 6.14 of the Agreement states: "Unless specifically stated to the contrary herein, time shall be of the essence for all events contemplated hereunder."

Paragraph 2.6 of the Agreement required Rugger to transfer the Aircraft on the closing date free and clear of all liens and encumbrances. Rugger was not able to comply with this requirement due to a mechanic's or materialman's lien filed against the Aircraft by Cutter Aviation Phoenix, Inc. (Cutter).

As a consequence, MCR and Rugger entered into an amendment to the agreement (the Amendment). The Amendment identified MCR as the buyer instead of Jennings. The Amendment gave Rugger 90 days from the date of closing in which to provide one of three means of releasing the Cutter lien, including, "Lien Release fully executed by Cutter . . . in original form delivered to Escrow Agent, recognized and accepted by the FAA [Federal Aviation Administration ]." Rugger agreed to hold back $90,000 with escrow for a period of 90 days.

Paragraph 3a. of the Amendment states that if Rugger can obtain a lien release by any one of the three ways identified in paragraph 2 within the 90-day term, then the entire amount of the holdback would be released to Rugger on the 90th day. Paragraph 3b. of the Amendment states that if Rugger cannot obtain a lien release by any one of the three ways identified in paragraph 2 within the 90-day term, then Rugger "agrees to release entire amount of holdback to Buyer at the expiration of the 90-day term."

Jennings, on behalf of MCR, and Rugger agreed the closing date would be February 23, 2016. An aircraft bill of sale dated February 23, 2016 passed title to the Aircraft from Rugger to MCR, and Jennings accepted the Aircraft on that date.

Rugger did not obtain a lien release within 90 days of February 23, 2016. Rugger obtained a lien release from Cutter on May 31, 2016, eight days after the expiration of the 90-day period, and delivered the lien release to escrow. The lien release was on an FAA form entitled "Notice of Recordation—Aircraft Security Conveyance." The lien release was not filed with the FAA. Rugger asked that $38,000 be released to it from escrow to cover the amount that Jeffrey Brannon (Rugger's managing member, not

a party to this appeal) had paid to Cutter to get the lien released.  Jennings did not agree to that request.

## PROCEDURAL HISTORY

Jennings filed a complaint against Rugger for breach of contract and breach of the implied covenant of good faith and fair dealing.  An amended complaint added MCR as a plaintiff.  The amended complaint alleged Rugger breached the Amendment by failing to obtain a release of the Cutter lien within the requisite 90-day time period and by refusing to release the $90,000 holdback.

An amended cross-complaint brought by Rugger and Brannon asserted causes of action against Jennings for breach of contract, breach of implied contract, and rescission of the Amendment.  The amended cross-complaint alleged Jennings breached the Amendment by refusing to allow the escrow to release the $90,000 holdback to Rugger.  The trial court sustained without leave to amend Jennings's demurrer to the breach of implied contract cause of action, and sustained with leave to amend the demurrer to the rescission cause of action.  Rugger and Brannon did not amend.

Jennings and MCR brought a motion for summary judgment on the amended complaint and the amended cross-complaint.  In the alternative, Jennings and MCR moved for summary adjudication of causes of action.  The trial court denied the motion for summary judgment but granted summary adjudication in favor of MCR on the breach of contract cause of action of the amended complaint.  The court granted summary adjudication in favor of Jennings and MCR on the breach of contract and rescission causes of action of the amended cross-complaint.

Jennings dismissed the amended complaint as to himself, and MCR dismissed the breach of the implied covenant cause of action.  Judgment awarding MCR $90,000 in damages was entered.  Rugger appealed.

# DISCUSSION

## I.

### Standard of Review

"'We review orders granting summary judgment or summary adjudication de novo. [Citations.] A motion for summary judgment or summary adjudication is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.'" (*Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 350.)

## II.

### Rugger's Failure to Properly Cite to the Record.

MCR and Jennings assert that Rugger's appellate briefs, with but a few exceptions, fail to support any factual assertions with citation to the clerk's transcript. California Rules of Court, rule 8.204(a)(1)(C) states an appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." Rule 8.204(a)(1)(C) requires accurate record references. We may decline to consider factual assertions that do not comply with this rule. (*Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 868; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 989-990.)

Although Rugger's appellate briefs do not strictly comply with California Rules of Court, rule 8.204(a)(1)(C), Rugger does cite to the statement of undisputed facts filed in support the motion for summary judgment. We do not approve of that practice, but here the record is not particularly long so we can easily locate in the record Rugger's references to the statement of undisputed facts.

5

### III.

### Whether Rugger Substantially Performed Is a Triable Issue of Material Fact.

The pleadings framed the issue for the summary judgment motion as which party breached the Amendment—Rugger, by not timely obtaining a lien release and depositing it into escrow, or MCR, by not allowing the $90,000 holdback to be released from escrow to Rugger. The trial court found that Rugger breached and "as [Rugger]'s conduct violates the plain language of the Agreement, 'substantial compliance' cannot be shown." Rugger argues it substantially performed because its delay of only eight days in depositing the lien release into escrow was immaterial. MCR and Jennings argue Rugger's delay was a material breach because the Agreement and the Amendment required strict compliance.

A. *Delayed Performance as Substantial Performance*

We conclude there is a triable issue as to whether Rugger substantially performed its obligations under the Amendment. "[S]ubstantial performance is sufficient, and justifies an action on the contract, although the other party is entitled to a reduction in the amount called for by the contract, to compensate for the defects." (*Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 186-187, italics omitted.) "What constitutes substantial performance is a question of fact, but it is essential that there be no wilful departure from the terms of the contract, and that the defects be such as may be easily remedied or compensated, so that the promisee may get practically what the contract calls for." (*Id.* at p. 187; see 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 843, p. 894.) The doctrine of substantial performance also applies when a party performs but misses a deadline. "[W]here time is not of the essence of a contract, payment made within a reasonable time after the due date stated in the contract constitutes compliance therewith." (*Walsh v. Walsh* (1940) 42 Cal.App.2d 287, 292; see

*Harvey v. White* (1963) 213 Cal.App.2d 275, 280-281 ["'a substantial compliance meets the requirements of any obligation'"].)

The evidence submitted in connection with the summary adjudication motion shows that Rugger did not willfully depart from the terms of the contract but diligently sought to obtain a lien release from Cutter. But Cutter resisted, and as a consequence Rugger was not able to deposit the lien release into escrow until eight days after the expiration of the 90-day period. MCR received what it contracted for—an aircraft free and clear of liens and encumbrances—the lien release just came eight days late.

Rugger was not required to file the lien release with the FAA. Paragraph 2a. of the Amendment requires Rugger to provide a lien release "fully executed by Cutter . . . in original form delivered to Escrow Agent, recognized and accepted by the FAA." We issued an order requesting supplemental briefing from the parties on several issues, including whether Rugger was required to file or record the lien release with the FAA. We agree with Rugger that the phrase "recognized and accepted by the FAA" refers to and modifies the phrase "original form." In other words, the Amendment required a lien release on a form recognized and accepted by the FAA; the Amendment did not require the lien release to be filed or recorded with the FAA.[1] There is no contention that the lien release deposited into escrow was not on a FAA-accepted form.

MCR and Jennings presented no evidence of damages caused by Rugger's eight-day delay in depositing the lien release into escrow. In our supplemental briefing

---

[1] Cutter had the legal obligation to file the lien release with the FAA. Business and Professions Code section 9798.3, subdivision (f) states: "Upon payment to the repairperson by or on behalf of the registered owner of the aircraft or other property subject to the lien, or by the customer, the repairperson shall cause to be filed with the FAA Aircraft Registry a notice of cancellation of lien. The filing of the notice of cancellation of lien shall terminate all interest of the repairperson that was otherwise subject to the notice of lien."

order we requested briefing on this issue: "Is there evidence in the record that respondents incurred any loss or damage due to appellant's failure to comply with paragraph 2 of Amendment A to Aircraft Purchase and Sale Agreement within the 90-day term identified in paragraph 3 of Amendment A to Aircraft Purchase and Sale Agreement?" MCR and Jennings claim they were "damaged in the amount of the $90,000.00 which Rugger refused to release from escrow . . . , but there remains a Lien on the Aircraft which will be there until the Release is filed with the FAA."

Neither of those claimed damages was caused by Rugger's delay in depositing the lien release into escrow. If Rugger had deposited the lien release into escrow within the 90-day period, then the $90,000 holdback would have been released to Rugger, not MCR or Jennings. Rugger was not required to file or record the lien release with the FAA.

MCR and Jennings also argue the $90,000 would compensate them for "their patience and forbearance in allowing Rugger to attempt to rectify the breach of the Agreement." But if that were the case, then the $90,000 would have been automatically credited to them, regardless of Rugger's performance, instead of being held in escrow.

The Restatement Second of Contracts analyzes substantial performance as a category of failure to render performance (Rest.2d Contracts, § 237, com. d., p. 220) and identifies five factors to consider in determining whether a failure to perform is material (*id.*, § 241, p. 237). Those factors are: (1) "the extent to which the injured party will be deprived of the benefit which he reasonably expected"; (2) "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived"; (3) "the extent to which the party failing to perform or to offer to perform will suffer forfeiture"; (4) "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances"; and (5) "the extent to which the behavior of the party failing to

8

perform or to offer to perform comports with standards of good faith and fair dealing." (*Ibid.*)

Consideration of factors identified in the Restatement Second of Contracts supports our conclusion there is a triable issue of fact as to substantial performance. The evidence submitted in connection with the motion for summary adjudication shows that MCR and Jennings, the allegedly injured parties, received what they bargained for (an aircraft free and clear of liens and encumbrances), any damage suffered by MCR and Jennings due to the eight-day delay can be compensated, Rugger did in fact cure its failure to perform, and Rugger's behavior comports with standards of good faith and fair dealing. We conclude in the following subsection there is a triable issue whether Rugger faces a risk of forfeiture if strict compliance were required.

B. *Effect of the Time Is of the Essence Provision in the Agreement*

The Agreement has a time is of the essence provision. Paragraph 6.14 of the Agreement states: "Unless specifically stated to the contrary herein, time shall be of the essence for all events contemplated hereunder."

The parties' appellate briefs did not address, or even mention, the time is of the essence provision. In our supplemental briefing order we requested briefing on three issues related to paragraph 6.14 of the Agreement: "1. What is the scope and meaning of paragraph 6.14 ('Time of the Essence') of the Aircraft Purchase and Sale Agreement and its effect on the issue of substantial performance? [¶] 2. Does paragraph 6.14 of the Aircraft Purchase and Sale Agreement apply to Amendment A to Aircraft Purchase and Sale Agreement? [¶] 3. Is paragraph 6.14 of the Aircraft Purchase and Sale Agreement enforceable if doing so would result in a forfeiture in this case?" Rugger filed a supplemental brief, as did MCR and Jennings.

It appears that paragraph 6.14 of the Agreement would apply to the Amendment. Although the Amendment does not include its own time is of the essence

9

provision, paragraph 4 of the Amendment states: "To the extent that the terms of the Amendment conflict with the terms of the Agreement, the terms of this Amendment shall control with all remaining terms of the Agreement in full force and effect." But we believe the scope of paragraph 6.14 presents a triable issue. A leading treatise explains: "Merely putting into the contract the words 'time is of the essence of this contract' may be effective for the purpose, because the context may make clear what the intention is and what the expression means. What the court must know, however, in order to give effect to such a cryptic provision, is: *What performance at what time is a condition of what party's duty to do what?* In some cases, the answer to this question is simple and obvious. Often, however, it is not clear whether the provision is meant to limit the duties of both parties, or to limit the duty of one and not the other." (8 Corbin on Contracts (rev. ed. 1999) § 37.3, p. 386.) We do not believe the scope of paragraph 6.14 is simple and obvious as it relates to the Amendment. MCR took title to and possession of the Aircraft the day after the Amendment was signed. MCR had possession of the Aircraft; therefore, it is not clear from the record the parties intended time to be of the essence with respect to Rugger's obligation under the Amendment to provide clear title within the 90-day period.

If paragraph 6.14 of the Agreement did apply to Rugger's obligations under paragraph 2 of the Amendment, then issues arise as to whether paragraph 6.14 renders Rugger's untimely performance a breach of contract. The traditional rule on the legal effect of a time is of the essence provision was this: "[W]hen time is made of the essence of a contract, a failure to perform within the time specified is a material breach of the contract." (*Gold Min. & Water Co. v. Swinerton* (1943) 23 Cal.2d 19, 27; see *U.S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68, 78.) "Where a purchaser of land has failed to make payment of the purchase price within the time specified and time is of the essence of the sale agreement, equity follows the law and does not disregard such

10

provisions but holds the buyer strictly to his obligation." (*Pitt v. Mallalieu* (1948) 85 Cal.App.2d 77, 81; see *Walsh v. Walsh, supra*, 42 Cal.App.2d at p. 292.)

The traditional rule has been tempered so that including a time is of the essence provision in a contract does not always make untimely performance a breach. In *Nash v. Superior Court* (1978) 86 Cal.App.3d 690, 696, disapproved on another ground in *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 528, footnote 5, the court concluded, "Courts have recognized that the inclusion of language such as 'time is of the essence' does not necessarily require a court to conclude that the buyer's rights would be so strictly limited." (See *Stratton v. Tejani* (1982) 139 Cal.App.3d 204, 211 [quoting *Nash*].) A time is of the essence provision will not be enforced if doing so would work a forfeiture: "Our review of the authorities reveals that California courts generally *do* strictly enforce time deadlines in real estate sales contracts, permitting the seller to cancel after the time specified where time is specifically made of the essence *unless there has been a waiver or potential forfeiture*." (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1341, some italics added.)

In *Williams Plumbing Co. v. Sinsley* (1975) 53 Cal.App.3d 1027, a contract for the sale of a duplex made time of the essence; however, the court held the buyer's delay in depositing the balance of the purchase price did not give the sellers the right to terminate the contract. (*Id.* at pp. 1031-1032.) The court concluded an unqualified rule enforcing time is of the essence provisions and permitting default "is at odds with prior and subsequent developments in California law." (*Id.* at p. 1032.)

*MacFadden v. Walker* (1971) 5 Cal.3d 809, 811 dealt with an installment land sale contract in which time was declared to be of the essence. The buyer made payments for over ten years and then stopped. (*Id.* at pp. 811-812.) The seller terminated the buyer's rights under the contract and sued to quiet title. The buyer then offered to pay the entire balance with interest and sought specific performance of the contract. (*Id.* at p. 812.) Affirming the trial court, the Supreme Court held "the anti-forfeiture policy

11

recognized in the *Freedman* [*v. The Rector* (1951) 37 Cal.2d 16] case also justifies awarding even wilfully defaulting vendees specific performance in proper cases." (*Id*. at p. 814.) The court stated: "'[W]hen the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been substantial part performance or if the vendee has made substantial improvements in reliance on his contract, permitting the vendor to terminate the vendee's rights under the contract and keep the installments that have been paid can result only in the harshest sort of forfeitures.'" (*Ibid.*, quoting *Barkis v. Scott* (1949) 34 Cal.2d 116, 122.)

These authorities concern contracts for the purchase and sale of real property. We see no reason why the rule regarding time is of the essence provisions and forfeiture should be different for a contract for the purchase and sale of an airplane.

In sum, as stated in Corbin on Contracts: "An express provision can make time of the essence. In this respect there is no limit upon our freedom of contract, as long as no part performance has taken place. If the enforcement of an express provision causes an excessive penalty or an unjust forfeiture, equity will prevent enforcement. Thus equity limits our power to determine our own contractual rights and duties." (8 Corbin on Contracts, *supra*, § 37.3 at p. 385, fn. omitted.)

Rugger expended $38,000 to get the lien released. If strict compliance were required, and the $90,000 holdback released to MCR, then Rugger would lose not only the $90,000 holdback, in effect a price reduction, but it would not receive any compensation for the $38,000 it had to pay Cutter to get the lien released. MCR, which has had possession of the Aircraft since the closing date of February 23, 2016, would receive an aircraft free of liens and encumbrances and a $90,000 reduction in price. The Amendment contemplates MCR would get the Aircraft free and clear of liens and encumbrances *or* a $90,000 price reduction by means of the holdback, but not both. As we have explained, there is no evidence MCR and Jennings suffered damages caused by

12

the eight-day delay in depositing the lien release into escrow.  These facts raise triable issues whether enforcement of paragraph 6.14 would result in an unjust forfeiture to Rugger and a windfall for MCR.

In conclusion, evidence that Rugger deposited the lien release into escrow only eight days after the expiration of the 90-period set forth in paragraphs 2 and 3 of the Amendment, and that MCR and Jennings suffered no damages as a result, raises a triable issue of material fact whether Rugger substantially performed its obligations under the Amendment.  Paragraph 6.14, the time is of the essence provision of the Agreement, does not automatically render Rugger's untimely performance a breach because there are triable issues regarding the scope of that paragraph and whether its enforcement would result in an unjust forfeiture to Rugger and a windfall for MCR.

## DISPOSITION

The judgment is reversed, and the matter is remanded.  Appellant to recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.


13