Filed 3/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARNOLD SCHEER,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>　　　　Defendants and Respondents. | B303379<br><br>(Los Angeles County Super. Ct. No. BC659170) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge. Reversed and remanded.

　　　　Greene Broillet & Wheeler, Mark T. Quigley, Christian T.F. Nickerson; Esner, Chang & Boyer, Stuart B. Esner and Kevin K. Nguyen for Plaintiff and Appellant.

　　　　Horvitz & Levy, Bradley S. Pauley, Scott P. Dixler, Eric S. Boorstin; Munger, Tolles & Olson, Bryan H. Heckenlively, John B. Major and Samuel H. Allen for Defendants and

Respondents The Regents of the University of California and Jonathan Braun.

Fisher & Phillips, Karl R. Lindegren and Lizbeth Ochoa for Defendant and Respondent Scott Binder.

_____

In this case alleging whistleblower retaliation, plaintiff and appellant Arnold Scheer, M.D., M.P.H., appeals a judgment entered pursuant to the grant of a motion for summary judgment in favor of defendants and respondents The Regents of the University of California (Regents), Jonathan Braun, M.D., Ph.D., and Scott Binder, M.D., (collectively, Defendants).

Scheer brought his whistleblower claims in three causes of action, alleging violations of three statutes: Labor Code section 1102.5, Government Code section 8547 et seq., and Health and Safety Code section 1278.5. In *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703 (*Lawson*), the California Supreme Court clarified the legal framework that applies to claims under Labor Code Section 1102.5, such as Scheer's claim in this case. While *Lawson* did not discuss Government Code section 8547.10, that statute contains nearly identical language to the language analyzed by our Supreme Court. We therefore conclude that *Lawson*'s legal framework applies to Scheer's Government Code claim as well. Because Defendants, in seeking summary adjudication of Scheer's Labor and Government Code claims, relied on a legal standard inconsistent with *Lawson*, we reverse and remand as to those claims.

*Lawson* did not change the legal framework for Scheer's third claim under Health and Safety Code section 1278.5. As to that claim, we conclude that a triable issue of material fact exists

2

as to whether the stated reasons for termination were pretextual. Therefore, the judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Pleadings*

On April 26, 2017, Scheer filed this action against his former employer, the Regents, and two of his former supervisors, Braun and Binder, alleging he was wrongfully terminated from his position as Chief Administrative Officer (CAO) of the UCLA Department of Pathology and Laboratory Medicine (Department) in retaliation for whistleblowing.

The operative first amended complaint pleaded the following causes of action:  (1) violation of Health and Safety Code section 1278.5 (first cause of action), against the Regents; (2) violation of Labor Code section 1102.5 (second cause of action), against the Regents; and (3) violation of Government Code section 8547 et seq., the California Whistleblower Protection Act (third cause of action), against the Regents, Braun, and Binder.

Scheer alleges that "he identified and became aware of numerous issues, violations, and concerns related to patient safety, mismanagement, economic waste, fraudulent and/or illegal conduct, unsafe and/or substandard conditions, and incompetence at the facilities of the UC REGENTS, including, but not limited to, recurrent lost patient specimen issues, mislabeling and mix-up of patient samples resulting in misdiagnosis, lost specimens used in NIH funded research, and failure and/or refusal to follow required procedures to investigate, analyze, and formulate action plans to correct patient safety issues."  Scheer pleaded that as a result of his attempts to properly report and correct the violative conduct, he was

3

terminated on June 2, 2016 from his position in the Department, where he had worked since 2004 and had served as CAO since 2009.

### B. *The motions for summary judgment*

The Regents and Braun jointly filed a motion for summary judgment or summary adjudication of issues. They argued that as to all three causes of action, Scheer was terminated for legitimate, nonretaliatory reasons, as set forth in their June 2, 2016 notice of intent to terminate (NOIT), and that Scheer could not meet his burden of demonstrating those reasons were pretextual, as required by *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*).

Under the three-part burden-shifting framework laid out in *McDonnell Douglas*, the employee must first establish a prima facie case of unlawful discrimination or retaliation (*McDonnell Douglas*, *supra*, 411 U.S. at p. 802); next, the employer bears the burden of articulating a legitimate reason for taking the challenged adverse employment action (*ibid*.); and finally, the burden shifts back to the employee to demonstrate that the employer's proffered legitimate reason is a pretext for discrimination or retaliation (*id*. at p. 804). In arguing that Scheer could not meet the third prong, the Regents and Braun asserted that Scheer was terminated not for whistleblowing, but "because he bullied and intimidated those with whom he worked and over time became ineffective in his role. . . . The letter from Department leadership informing Plaintiff of the intent to terminate him [i.e., the June 2, 2016 NOIT] made that clear, stating Plaintiff was being terminated because he (1) had an overly aggressive attitude concerning certain negotiations; (2) had a harsh and disruptive style at meetings; (3) had become

4

increasingly ineffective as CAO; (4) lack[ed] . . . enthusiasm for [his] position; and (5) was not an effective leader."

Binder filed a separate motion for summary judgment, directed solely at the third cause of action to which he was a party. Binder similarly contended that Scheer was terminated for legitimate, nonretaliatory reasons, and Scheer could not meet his burden under *McDonnell Douglas* to establish pretext.

### C. *Scheer's opposition to summary judgment*

In opposition, Scheer contended there were triable issues of fact as to whether Defendants' stated reasons for his termination were pretextual. Among other things, Scheer asserted the "reasons given for [his] termination in the NOIT are patently false and are expressly refuted by his having received outstanding performance on his FYl5 Performance Review, given by Defendant Dr. Braun in July 2015. Further, Dr. Scheer's FY16 goals were developed in consultation with Dr. Braun and submitted on or about September 11, 2015. The FY16 goals do not identify any behavioral or other performance issues. . . . Thus, a triable issue of fact exists whether defendants' stated reasons for termination are true. For this threshold reason the motion should be denied."

### D. *Trial court's ruling*

After hearing the matter and taking it under submission, the trial court issued an order granting Defendants' motions for summary judgment. The trial court ruled that the *McDonnell Douglas* burden-shifting analysis governed the three whistleblowing causes of action, and it proceeded to apply that framework.

On the first step of the analysis, the trial court found that Scheer met his burden to prove a prima facie case of retaliation

5

by a preponderance of the evidence. The trial court also noted that Defendants did not contest the sufficiency of Scheer's prima facie case of retaliation. Thus, "the burden shifts to Defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action."

On the second step, the trial court found that "Defendants present sufficient evidence demonstrating that Plaintiff was terminated for his harsh and aggressive style of work and increasing ineffectiveness as CAO. . . . Defendants also present supporting testimony and documentary evidence that there were multiple complaints and concerns about Plaintiff regarding his aggressive behavior and that the Human Resources Department conducted an investigation accordingly. . . . The proffered reason for termination, whether good or not, is facially unrelated to the alleged retaliatory motive and, therefore, Defendants meet their burden of production. . . . [¶] The Court finds that Defendants properly show legitimate, non-retaliatory reasons to defeat the presumption of retaliation. The burden shifts back to Plaintiff to show the proffered reasons were untrue or pretextual."

On the third and final step, which is the crux of this appeal, the trial court ruled that Scheer had failed to raise a triable issue of material fact as to pretext. The trial court stated:

"Plaintiff argues that, while there is no direct evidence of discriminatory intent, Defendants' stated reason for his termination is false because he received satisfactory performance reviews and even accolades for his outstanding performance until even after he made complaints about patient safety issues in 2015. . . . Plaintiff asserts that this is sufficient circumstantial evidence of pretext because his termination can only be explained by Defendants' retaliatory motive for his protected activity.

6

"Upon review of the records, the Court finds that those evaluations do not speak to or controvert the proffered reason for Plaintiff's termination.  His performance reviews take the form of checklists relating to completion of individual tasks, rather than subjective evaluations of the quality of his work or his style and manner in completing those tasks. . . .  [S]ee *Hicks* [*v. KNTV Television, Inc.* (2008)] 160 Cal.App.4th [994,] at 1009-1010 (While a news anchor had been complimented for various news casts and his reporting skills in general, that did not directly controvert evidence that his anchoring style was inadequate in different aspects.)  Plaintiff's nominations for Staff Appreciation and Recognition awards also do not create an inference of pretext, as the nominations were written in 2012 and 2013 before complaints and concerns about his performance and working style became an issue for review. . . .  Further, contrary to Plaintiff's argument, the fact that Plaintiff continued to receive satisfactory performance review in 2015 in effect shows that his evaluation was not affected by his protected activity or any alleged retaliatory motive based on the activity.

"Lastly, Plaintiff's evidence of temporal proximity between Plaintiff's reporting of safety issues and his termination is not sufficient to support an inference of pretext.  In the third stage of burden to show pretext, temporal proximity alone does not raise a triable issue as to pretext, whereas the same may satisfy the causation requirement at the first step of the burden-shifting process.  [Citation.]  Standing alone against Defendants' strongly supported legitimate reason for termination, temporal proximity here does not amount to a showing of discriminatory intent. . . .  In fact, the records show that verbal complaints from

7

the faculty regarding Plaintiff's performance issues started in 2013, before Plaintiff engaged in his first protected activity. . . .

Therefore, the Court finds that Plaintiff fails to meet the burden to provide specific and substantial responsive evidence that the employer's proffered reasons were untrue or pretextual."

Scheer filed a timely notice of appeal from the December 27, 2019 judgment.

### E. *The* Lawson *decision*

This court deferred consideration of the appeal pending the California Supreme Court's decision in *Lawson v. PPG Architectural Finishes, Inc.*, *supra*, 12 Cal.5th 703, which would determine whether Labor Code section 1102.6 (discussed in more detail below), rather than the *McDonnell Douglas* test, provides the framework for scrutinizing retaliation claims brought pursuant to Labor Code section 1102.5.

On January 27, 2022, the California Supreme Court issued its decision in *Lawson v. PPG Architectural Finishes, Inc.*, *supra*, 12 Cal.5th 703. *Lawson* held that Labor Code "[s]ection 1102.6 provides the governing framework for the presentation and evaluation of whistleblower retaliation claims brought under [Labor Code] section 1102.5." (*Lawson*, at p. 718.) *Lawson* held with clarity that the "plaintiff need not satisfy *McDonnell Douglas* in order to discharge" the plaintiff's burden. (*Ibid.*)

Following the issuance of *Lawson*, we requested that the parties file supplemental briefs addressing the impact of *Lawson* on the issues presented in the appeal. Scheer filed his

8

supplemental brief on February 7, 2022, and Defendants filed their briefs on February 17, 2022.[1]

## DISCUSSION

Scheer contends that the trial court erred in ruling that there were no triable issues of material fact as to his claims. In his supplemental brief, Scheer also contends that *Lawson* requires reversal as to his retaliation claims under both Labor Code section 1102.5 and Government Code section 8547.10, because the *McDonnell Douglas* burden shifting analysis no longer applies to those claims.

## I. Standard of appellate review

"We independently review an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We determine whether the court's ruling was correct, not its reasons or rationale. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.) 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504–505.) In performing our de novo

---

[1] Scheer and the Regents addressed in their supplemental briefs the impact of *Lawson* on Scheer's claim under Government Code section 8547.10, among other issues. On March 3, 2022, we sent the parties our tentative decision which included a notice that the court will not entertain further briefing based on the tentative. At oral argument, the Regents requested further briefing on the impact of *Lawson* on Government Code section 8547.10. Because the Regents had an opportunity to brief this issue and in fact did so, we deny their request for additional briefing.

9

review, we view the evidence in the light most favorable to Scheer, as the party opposing summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

## II. *Lawson* requires reversal as to Scheer's second cause of action for violation of Labor Code section 1102.5.

Labor Code section 1102.5 prohibits an employer from preventing an employee's disclosure of information to a governmental agency. It is a whistleblower statute, the purpose of which is to encourage workplace whistleblowers to report unlawful acts without fearing retaliation. *(Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 287.) Labor Code section 1102.6 is part of the same statutory scheme. It provides that once an employee-whistleblower establishes by a preponderance of the evidence that retaliation was a contributing factor in the employee's termination, demotion, or other adverse action, the employer bears the burden of demonstrating by clear and convincing evidence that it would have taken the same action for legitimate, independent reasons. (Lab. Code, § 1102.6.)[2]

In *Lawson*, *supra*, 12 Cal.5th 703, our Supreme Court addressed whether the evidentiary standard set forth in Labor Code section 1102.6 replaced *McDonnell Douglas* as the relevant

---

[2] Labor Code section 1102.6 provides as follows: "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5."

evidentiary standard for retaliation claims brought pursuant to Labor Code section 1102.5.  *Lawson* held that Labor Code section 1102.6, adopted in 2003, provides the governing framework for analyzing whistleblower retaliation claims brought under Labor Code section 1102.5.  It "places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action.  *The plaintiff need not satisfy* McDonnell Douglas *in order to discharge this burden.*  Once the plaintiff has made the required showing, *the burden shifts to the employer to demonstrate, by clear and convincing evidence*, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." (*Lawson*, at p. 718, italics added.)

Here, the Regents moved to summarily adjudicate the second cause of action, violation of Labor Code section 1102.5, pursuant to the *McDonnell Douglas* framework, and the trial court utilized that framework to summarily adjudicate the second cause of action in favor of the Regents.  Because the moving papers failed to employ the applicable framework prescribed by Labor Code section 1102.6, the Regents failed to meet their initial burden in moving to summarily adjudicate the second cause of action.  Their motion as to the second cause of action should therefore have been denied.

Scheer's opposition papers in the trial court also did not invoke Labor Code section 1102.6.  This does not preclude our consideration of the issue.  Prior to *Lawson*, which resolved the question at the request of the Ninth Circuit, the state of the law was unsettled.  Further, the trial court's "assessment of whether

11

the moving party has carried its burden—and therefore caused a shift—*occurs before the court's evaluation of the opposing party's papers*" to the motion for summary judgment. (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 367, italics added.)  On our de novo review, we apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.  (*Zavala v. Arce, supra*, 58 Cal.App.4th at p. 925.)  Because the Regents' moving papers in the trial court failed to apply the Labor Code section 1102.6 framework, they failed to meet their threshold burden.  Summary adjudication of the second cause of action should have been denied.

The Regents argue that on this record, we should affirm the trial court's ruling with respect to the second cause of action, notwithstanding that *Lawson* revised the analytical framework for resolving claims under Labor Code section 1102.5.  We disagree.  Our role as an appellate court is to review the trial court's order on the motion the Regents actually made in the trial court, not to rule in the first instance on whether the Regents are entitled to summary adjudication on the second cause of action in light of the Labor Code section 1102.6 framework.  Now that *Lawson* has clarified the law, the Regents are not precluded on remand from moving for summary adjudication of the second cause of action in accordance with the Labor Code section 1102.6 framework.

III.    *Lawson* **requires reversal as to the Scheer's third cause of action for violation of Government Code section 8547.10**.

Although *Lawson* involved Labor Code section 1102.6, it informs our analysis of the third cause of action that alleged a

12

violation of Government Code section 8547.10 by the Regents, Braun and Binder.

Government Code section 8547.10, which pertains to University of California employees, authorizes a civil action for damages on a complaint for retaliation. (*Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 355–356 (*Taswell*).) The statute provides in relevant part at subdivision (e): "In any civil action or administrative proceeding, once it has been demonstrated by a preponderance of the evidence that an activity protected by this article was a contributing factor in the alleged retaliation against a former, current, or prospective employee, *the burden of proof shall be on the supervisor, manager, or appointing power to demonstrate by clear and convincing evidence* that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in protected disclosures or refused an illegal order." (Gov. Code, § 8547.10, subd. (e), italics added.)

This language in Government Code section 8547.10 mirrors the language of Labor Code section 1102.6, which states that "once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee*, the employer shall have the burden of proof to demonstrate by clear and convincing evidence* that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." (Italics added.)

Guided by *Lawson* and applying its reasoning, we conclude that Government Code section 8547.10, subdivision (e), rather than *McDonnell Douglas*, provides the relevant framework for

13

analyzing claims under Government Code section 8547.10. Because Defendants incorrectly relied upon the *McDonnell Douglas* framework in moving for summary adjudication on this cause of action, the trial court likewise erred in summarily adjudicating the third cause of action in favor of Defendants. On remand, Defendants are not precluded from moving for summary adjudication of the third cause of action in accordance with the proper framework as set forth in Government Code section 8547.10, subdivision (e).

IV. **The trial court erred in finding no triable issues of material fact on Scheer's first cause of action for violation of Health and Safety Code section 1278.5.**

A. **Lawson *did not alter the legal framework for claims asserting a violation of Health and Safety Code section 1278.5.***

The final issue on review is the first cause of action, which alleged a violation by the Regents of Health and Safety Code section 1278.5. The statute prohibits retaliation against any employee of a health facility who complains to an employer or government agency about unsafe patient care. (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 660–661.) The statute also provides a "rebuttable presumption that discriminatory action was taken by the health facility, or by the entity that owns or operates that health facility" if responsible staff had knowledge of the employee's complaint "and the discriminatory action occurs within 120 days of the filing of the grievance or complaint by the employee." (Health & Saf. Code, § 1278.5, subd. (d)(1).) Discriminatory action includes discharge of the employee. (*Id.*, subd. (d)(2).)

14

California courts have applied the *McDonnell Douglas* framework to a cause of action alleging a violation of Health and Safety Code section 1278.5. (*Armin v. Riverside Community Hospital* (2016) 5 Cal.App.5th 810, 830; see *Taswell, supra,* 23 Cal.App.5th at pp. 350, 365–366 [applying burden shifting test consistent with *McDonnell Douglas* in evaluating summary judgment on retaliation claims under Health & Saf. Code § 1278.5 and other whistleblower statutes].) The *Lawson* decision has no direct bearing on the interpretation of Health and Safety Code section 1278.5, which is structured differently from the Labor Code provision that was construed in *Lawson.* Further, neither Scheer nor the Regents contend that *Lawson* altered California law concerning the application of the *McDonnell Douglas* framework to a cause of action brought under Health and Safety Code section 1278.5. Accordingly, in reviewing the trial court's decision, we will do so under the *McDonnell Douglas* framework on which the Regents based their motion, and which formed the basis for the trial court's ruling.

**B.    *A triable issue of material fact exists as to whether the stated reasons for termination were pretextual.***

Scheer argues that, under the third prong of the *McDonnell Douglas* framework, triable issues of fact exist as to whether his firing was pretextual. We agree.

In their moving papers in the trial court, the Regents asserted that Scheer was terminated for legitimate, nonretaliatory reasons. Specifically, the Regents asserted that Scheer "bullied and intimidated those with whom he worked and over time became ineffective in his role. . . . The letter from Department leadership [i.e., the June 2, 2016 NOIT signed by

15

Braun and Binder] informing Plaintiff of the intent to terminate him made that clear, stating Plaintiff was being terminated because he (1) had an overly aggressive attitude concerning certain negotiations; (2) had a harsh and disruptive style at meetings; (3) had become increasingly ineffective as CAO; (4) lack[ed] . . . enthusiasm for [his] position; and (5) was not an effective leader."

If the employer meets its initial burden on summary judgment to show that the adverse employment action was based upon legitimate, nondiscriminatory factors, "the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' " (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.)  Both "direct and circumstantial evidence can be used to show an employer's intent to retaliate.  'Direct evidence of retaliation may consist of remarks made by decisionmakers displaying a retaliatory motive. [Citation.]'  [Citation.]  Circumstantial evidence typically relates to such factors as the plaintiff's job performance, the timing of events, and how the plaintiff was treated in comparison to other workers." (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1153.)  Here, Scheer relied on circumstantial evidence to show a retaliatory motive.

Evidence "that the employer's claimed reason is *false*—such as that it conflicts with other evidence, or appears to have been contrived after the fact—will tend to suggest that the employer seeks to conceal the real reason for its actions, and this in turn

16

may support an inference that the real reason was unlawful. This does not mean that the factfinder can examine the employer's stated reasons and impose liability solely because they are found wanting. But it can take account of manifest weaknesses in the cited reasons in considering whether those reasons constituted the real motive for the employer's actions, or have instead been asserted to mask a more sinister reality." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 715 (*Mamou*).)

The NOIT, in the first paragraph, advised Scheer of the intent to dismiss him from his position as CAO "because the needs of the department and your poor performance and conduct no longer support your appointment." Josh Samuels, the employee relations manager, drafted the NOIT. When questioned at his deposition about "the needs of the department," Samuels stated, "I would refer basically to the rest of the letter. And also, part of that language I think is also a reference to the termination language in the person[nel] policies for staff members." Thus, a trier of fact could draw the inference that the statement in the NOIT about the needs of the department was merely boilerplate language drawn from a personnel manual.

As for the statement in the NOIT that Scheer was being terminated for "poor performance," that fact was strongly disputed by Scheer. In his opposing separate statement, Scheer proffered as an additional disputed fact the following: "From the beginning of his tenure at UCLA in 2004 through the date of his constructive termination in February 2016, Dr. Scheer continued to receive accolades, positive feedback, promotions, and additional assignments and responsibilities from upper management, including from Defendants Dr. Braun and

17

Dr. Binder.  Each year he was rewarded with a maximum merit increase in salary and near maximum incentive awards.  At no time was Dr. Scheer made aware of any alleged shortcomings or deficiencies in the performance of his job duties.  Indeed, the reviews and evaluations mentioned above clearly indicate that his work and performance were exemplary during that time frame.  Notably, Dr. Scheer was consistently being given additional responsibilities and oversight until the date of his termination."

The Regents did not dispute this fact.  In their responsive papers, they merely stated, "**Immaterial**.  Plaintiff's receipt of unspecified accolades, positive feedback, promotions, and additional assignments does not rebut that Defendants had a non-retaliatory reason for terminating Plaintiff, i.e., Plaintiff's unprofessional demeanor and ineffective performance as CAO in specific ways later in his career, and that Defendants in fact terminated Plaintiff for that reason."

In fact, Scheer presented evidence that he received his performance evaluation for fiscal year 2014-2015 around the end of July 2015, just three months before his termination was initiated.  Like his earlier performance evaluations, his most recent evaluation contained no criticisms or negative feedback concerning his work product or performance from June 2014 to June 2015.   Scheer also worked with Braun and Binder on his performance goals and objectives for fiscal year 2015-2016, which were completed and submitted in September 2015.  Scheer's performance goals and objectives for 2015-2016 did not indicate any areas of his work product or performance that were deficient and needed improvement.

18

Scheer's opposing separate statement also stated that he "was never informed of any issues regarding his behavior or performance. The only time any issue was brought up was in February of 2015, when he was told by Dr. Braun about the review by Mr. Samuels that was initiated by the retaliatory complaints of Mr. Colonna and Ms. Toy. Dr. Braun told Dr. Scheer that Mr. Samuels did not find any problems but told Dr. Scheer to be careful of Ms. Yost and Mr. Colonna. Dr. Binder and Dr. Braun continued to praise Dr. Scheer's work through October 2015."

Again, this fact was undisputed by the Regents. The Regents merely responded, "**Immaterial.** The fact that Plaintiff was not informed of his performance issues does not rebut that those issues in fact existed and that, accordingly, Defendants had a non-retaliatory reason for terminating Plaintiff, i.e., Plaintiff's unprofessional demeanor and ineffective performance as CAO in specific ways later in his career, and that Defendants in fact terminated Plaintiff for that reason. These facts therefore do not establish pretext."

The Regents' characterization of Scheer's evidentiary showing as "immaterial" is not well taken. Scheer's undisputed evidence showed that he unfailingly received excellent evaluations over a 12-year period, and no one ever advised him of any shortcomings or deficiencies that were asserted in the NOIT. Scheer's evidence put in issue the NOIT's statement that he was being terminated for "poor performance and conduct."

The NOIT also stated that Scheer had become "a problematic presence within the Department." However, Binder, one of the signatories of the NOIT, stated at his deposition "a problematic presence within the department, I don't agree with

19

that. [¶] . . . [¶] . . . I did not think he was a problematic presence within the Department." Binder also indicated in his deposition that he had been reluctant to sign the NOIT because he disagreed with its content.

The NOIT also stated that Defendants had taken a very serious adverse personnel action against Scheer: "Specifically, in February, 2015, we expressed concerns about your interactions with Shannon O'Kelley, Chief Operating Officer, and Laura Yost, Executive Director, Clinical Services for UCLA Health. Over the following months, concerns were expressed to you about your overly aggressive attitude concerning negotiations with the Hospital regarding memoranda of understanding as well as your style at meetings that was deemed to be harsh and disruptive. As a result of these concerns, *we took the significant step of removing all of your Hospital responsibilities*, and your duties were thereafter limited to the School of Medicine." (Italics added.)

However, Scheer's opposing declaration stated that prior to the NOIT, he was never advised that he had been stripped of his hospital responsibilities or that he had been restricted in his duties to the medical school. Scheer's declaration also stated that his fiscal year 2016 objectives, approved by Braun in September 2015, specifically identified his goals for clinical lab oversight. Thus, Scheer successfully controverted the statement in the NOIT that he had previously been relieved of his hospital responsibilities

The NOIT also criticized Scheer's "overly aggressive attitude concerning negotiations with the Hospital regarding memoranda of understanding." However, Scheer previously received commendation for his work in the negotiations. On

May 13, 2015, Binder and Braun sent the following email to their colleagues: "Dear colleagues, [¶] As you know, our department has been engaged in negotiation with the UCLA Hospital System on several aspects of our fiscal relationship. One important issue has been to reach a new valuation of our medical directorship portfolio. I am pleased to report that we have completed an agreement that has more than doubled its valuation to $5.2 M. This change is retroactive for the current fiscal year, and applies as well to the upcoming fiscal year budget. [¶] I would like to thank each of you for participating in the effort study several months ago, which provided key information for the negotiation. Led by Drs. Binder and Braun, *the success of the negotiation reflects the assiduous work of Arnie Scheer*, Mary Alice Mita, and Chris Hernandez. *Let us thank each other and them for this great outcome*, and its benefit for the department mission and the welfare of our faculty." (Italics added.) This email calls into question the veracity of the statement in the NOIT that Scheer's conduct in the negotiations was a factor in his termination.

The NOIT also criticized Scheer's involvement in the opening of a new laboratory in China, stating, "In spite of one visit to the Chinese laboratory you never followed through with the issues there." However, Scheer's fiscal year 2015 performance evaluation, sent July 31, 2015, stated, "100% of goal was obtained by implementing other revenue enhancement opportunities such as . . . opening of joint venture with CTI in Shanghai, China, and taking on new sites and testing."

Based on all the above, the trier of fact could determine that the Regents' stated reasons, as set forth in the NOIT, were untrue and were a pretext for retaliation. As we have stated, liability cannot be imposed merely because the employer's stated

reasons "are found wanting. But [the factfinder] can take account of manifest weaknesses in the cited reasons in considering whether those reasons constituted the real motive for the employer's actions, or have instead been asserted to mask a more sinister reality." (*Mamou*, *supra*, 165 Cal.App.4th at p. 715.) Here, Scheer's evidence that the Regents' stated reasons were untrue, in conjunction with his reports concerning patient safety, his stellar record up to his date of termination and the temporal proximity between his protected conduct and the employer's adverse action, serve to raise a triable issue of material fact in this regard.

The trial court found that Scheer's excellent evaluations "do not speak to or controvert the proffered reason for Plaintiff's termination. His performance reviews take the form of checklists relating to completion of individual tasks, rather than subjective evaluations of the quality of his work or his style and manner in completing those tasks." The trial court's view of the evaluations as mere "checklists" is incorrect because the evaluation forms included a field for comments to be entered. Moreover, it is undisputed that Scheer's evaluations were unfailingly excellent and that there were no adverse comments. Therefore, it is for the trier of fact to determine whether, as stated in the NOIT, Scheer was terminated for his "poor performance and conduct" or whether those stated reasons were pretextual.

In finding that Scheer's evaluations failed to raise a triable issue as to pretext, the trial court also cited *Hicks v. KNTV Television, Inc.*, *supra*, 160 Cal.App.4th 994 for the proposition that although plaintiff may have been complimented for various newscasts and for his reporting skills in general, that did not controvert evidence that his anchoring style was inadequate in

other respects. (*Id*. at pp. 1009–1010.) *Hicks* is not on point. Here, Scheer raised a triable issue of material fact by presenting evidence that the proffered reasons for termination that were set forth in the NOIT were untrue and thus were a pretext for a retaliatory discharge.

The trial court also ruled that Scheer's "evidence of temporal proximity between [his] reporting of safety issues and his termination is not sufficient to support an inference of pretext." However, as detailed above, Scheer's evidence of pretext went far beyond a showing of temporal proximity between his reporting and his termination—he raised a triable issue of material fact by other facts including evidence that the stated reasons in the NOIT were a pretext for a retaliatory discharge.

In sum, the trial court erred in summarily adjudicating the first cause of action in favor of the Regents.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion. Arnold Scheer is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION.

LIPNER, J.*

We concur:

EDMON, P. J.                    EGERTON, J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23