Filed 1/15/26  Taswell v. The Regents of the University of Cal. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARL TASWELL, M.D.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNVERSITY OF CALIFORNIA,<br><br>Defendant and Respondent. | G063058<br><br>(Superior Ct. Case No. 30-2013-00659259)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Knill, Judge. Affirmed.

Bohm Law Firm, Lawrence A. Bohm, and Zane E. Hilton, for Plaintiff and Appellant.

Horvitz & Levy, H. Thomas Watson, and Dean A. Bochner, and Gordon Rees Scully Mansukhani, Stephen E. Ronk, and Erika L. Shao, for Defendant and Respondent.

\*　　　　\*　　　　\*

Carl Taswell, M.D., appeals from a judgment after a jury trial in favor of respondent The Regents of the University of California (The Regents). The jury determined that, although Taswell engaged in protected whistleblowing activity, the whistleblowing activity was not a substantial factor in the adverse employment actions to place him on paid administrative leave and not renew his six-month employment contract with the University of California at Irvine (UCI). Taswell contends the decision of this court in a prior appeal precluded the trial court from excluding certain evidence at trial. We disagree and conclude the trial court was not barred from excluding evidence under the law of the case doctrine. Taswell also challenges the trial court's evidentiary rulings, including its categorical exclusion of events and conduct that occurred after the adverse employment actions and its exclusion of seven specific pieces of evidence. As discussed below, we find no prejudicial evidentiary error. Accordingly, we affirm.

STATEMENT OF THE CASE

I.

PRIOR APPEAL

"In April 2012, Taswell filed an internal complaint for whistleblower retaliation, alleging the decisions to place him on investigatory leave and not to renew his contract constituted retaliation for his whistleblowing activities. He also initiated a grievance procedure pursuant to [UCI]'s academic personnel manual." (*Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 349**.)** The hearing officer "concluded

2

[UCI] did not retaliate against Taswell because of his whistleblower activities and that the university would not have renewed Taswell's contract even if he had not engaged in those activities." (*Ibid.*) After the Vice Provost for Academic Personnel approved the hearing officer's decision, Taswell exhausted UCI's administrative grievance process. (*Ibid.*)

Rather than file a petition seeking a writ of mandamus, on July 1, 2013, Taswell filed the instant action against The Regents. The operative fourth amended complaint asserted claims for retaliation under Government Code sections 8547 and 12653, Labor Code section 1102.5, and Health and Safety Code section 1278.5**.** The trial court granted summary judgment for The Regents on grounds that the retaliation claims were barred by the res judicata and/or collateral estoppel effect of the administrative decision, and that Taswell failed to exhaust judicial remedies. (*Taswell*, *supra*, 23 Cal.App.5th at p. 350.) Taswell appealed.

A panel of this court reversed. The court concluded Taswell was not required to file a petition seeking a writ of mandamus to exhaust his judicial remedies. Additionally, UCI's administrative decision has no res judicata or collateral estoppel effect on this lawsuit. (*Taswell*, supra, 23 Cal.App.5th at pp. 351–362.) Finally, the court concluded there was sufficient evidence to create a triable issue of material fact as to pretext on the retaliation claims. (*Id.* at pp. 365–366.)

II.

JURY VERDICT, JUDGMENT, AND NEW TRIAL MOTION

On remand, Taswell dismissed his claim for retaliation in violation of Government Code section 12653.

A jury trial was held on the retaliation claim under Government Code section 8547.10 and Labor Code section 1102.5. The jury returned a

3

defense verdict on both claims. As to the claim under Government Code section 8547.10, the jury found that Taswell reported improper governmental activities in good faith, but that those reports were not a contributing factor to the university's decisions to place him on leave and not renew his appointment. Similarly, as to the claim under Labor Code section 1102.5, the jury found that Taswell disclosed information with reasonable cause to believe the information revealed a violation of law or regulation, but the disclosure was not a contributing factor to the decisions to place him on leave and not renew his appointment.

On July 6, 2023, the trial court entered judgment for The Regents on the two retaliation claims submitted to the jury. Subsequently, Taswell voluntarily dismissed with prejudice his retaliation claim under Health and Safety Code section 1278.5.

On July 20, 2023, Taswell moved for a new trial. He argued he was entitled to a new trial because (1) the trial court erred in excluding two pieces of evidence at trial (a second PowerPoint and his successor's qualifications), (2) defense counsel engaged in misconduct, and (3) the evidence was insufficient to support the verdict. The court denied the motion. It determined there was no prejudicial evidentiary error and no attorney misconduct. Finally, the court concluded "[t]here was sufficient credible evidence to support the verdict, including defendant's theory . . . that plaintiff was placed on administrative leave, and [his] employment was not renewed, due to his inability or unwillingness to perform, or malfeasance concerning, necessary job duties, and not due to retaliation for whistleblower activity." The court also found Taswell "was not credible in much of his testimony," and found The Regents' witnesses more credible.

Taswell timely appealed.

STATEMENT OF THE FACTS

I.

TASWELL'S HIRING

Dr. Scott Goodwin testified that during the relevant time periods, he chaired the Department of Radiological Sciences at UCI's School of Medicine. In late 2011, he contacted Taswell, whom he had known for several years, to fill a vacancy in the authorized user position at UCI's Brain Imaging Center (BIC). The authorized user is responsible for, and has control over, all of "the quality, technical, and medical aspects of each imaging procedure performed" at BIC. The authorized user reviews research proposals involving BIC to ensure sound study design and safety compliance. The research at BIC cannot be done without having an authorized user.

Although Goodwin had concerns about some of Taswell's personality traits, he was under time pressure to fill the position quickly and Taswell was very qualified and available. During his conversation with Taswell, Goodwin told him BIC had prior "problems" with inadequate oversight and that it would be "challenging to work" with Dr. Steven Potkin, the Director of BIC at the time. Taswell was hired to a part-time, six-month faculty appointment, beginning on January 2, 2012, and ending on June 30, 2012. The appointment was "'self-terminating on the end date.'" Goodwin had regular weekly contact with Taswell once he began working at BIC. Based on these interactions, Goodwin developed concerns about Taswell's anger issues and difficulty working with others. Instead of working collaboratively with other BIC personnel, Taswell would complain about them and call them "awful," "horrible," or "a criminal." By late January or early February 2012, Goodwin was very concerned that a new authorized user might need to be hired.

5

## II.

### TASWELL'S COMPLAINTS

On January 9, 2012, Taswell sent an email to Goodwin and Barbara Hamrick (UCI's Radiation Safety Officer), complaining he was being denied access to BIC servers to review images and reports. In response, Goodwin, Hambrick, Dr. Ralph Clayman (Dean of UCI's School of Medicine), and James Hicks (UCI's Associate Vice Chancellor of Research) all supported Taswell's request for access. Hicks directed Rebecca Brueselas, Associate Dean of UCI's School of Medicine, to assist Taswell with any access issues.

In early February 2012, Dr. Jogeshwar Mukherjee, who was managing BIC's radiochemistry laboratory, left BIC to open a new radiochemistry laboratory at UCI to conduct animal research. Dr. Farhad Karimi was hired to replace him. Shortly thereafter, Karimi raised safety and operation concerns about the radiochemistry laboratory. In response, the School of Medicine shut down the radiochemistry laboratory on February 9, 2012. On February 16, 2012, Karimi provided additional information about safety and operational issues at BIC. The next day, Clayman and Hicks shut down all operations at BIC.

The same day BIC was shut down (February 17), Taswell met with Karimi and talked with him for several hours about Karimi's concerns. Later that evening ,Taswell called Goodwin to discuss Karimi's allegations. Goodwin advised Taswell to report his concerns to "people higher up." Taswell later sent Goodwin two PowerPoint presentations prepared by Karimi detailing his issues with BIC.

On February 19, 2012, Taswell reported the concerns about BIC to the UCI whistleblower hotline. In his report, Taswell stated Goodwin and Clayman had been notified and an investigation was ongoing. Three days

6

later, Taswell met with Michael Arias, who was UCI's Locally Designated Official for handling whistleblower complaints. Because Taswell was very anxious during the meeting, Arias informed Taswell he could be placed on administrative leave if he wished. Taswell refused because he was concerned he would be suspected as a whistleblower if he went on leave. Arias testified that, to ensure the integrity of UCI's investigative process, a whistleblowing employee could be placed on involuntary leave if the employee continues to investigate or talk about the reported issues.

On February 28, Arias assigned Hicks to investigate Taswell's allegations of (1) "[v]arious safety violations at . . . BIC," (2) "[i]mproper activities involving research protocols, data analysis, and research and patient record keeping," and (3) "[c]onflicts of interest involving Dr. Potkin" and others. Arias assigned Becky FitzMaurice to investigate allegations that (1) Dr. Potkin and others obstructed Taswell's attempts to obtain access to information necessary to perform his job and (2) the Radiation Safety Committee (RSC) and various UCI officials took no action when Taswell reported concerns about BIC.

On March 16, 2012, Taswell reported concerns of "[s]erious violations at UCI Brain Imaging Center" to the California Department of Public Health. In his report, he alleged he had already suffered retaliation for his whistleblowing activity and asserted Potkin should have his medical license revoked for his noncompliant with patient safety regulations. Three days later, Taswell informed Goodwin and FitzMaurice he had reported his concerns about BIC to various state and federal agencies, including the Food and Drug Administration (FDA).

7

Just before their first meeting in February 2012, Arias had sent an e-mail to Taswell, advising him to keep the allegations confidential and not investigate the allegations himself, in accordance with UCI's whistleblower policy. However, around March 15, 2012, Taswell discussed the complaints with then UCI Law School Dean Erwin Chemerinsky.

On March 15, 2012, Taswell also discussed the complaints at a regularly scheduled meeting of the RSC. Before the meeting, Taswell had assured Goodwin "'he would stay relatively quiet and objective.'" However, Goodwin was informed by several people at the meeting that Taswell was "extremely disruptive, agitated, wouldn't listen. He was talking over other people." Hambrick, who attended the meeting, testified Taswell discussed his concerns about BIC and what he learned from Karimi, including "violations [that] bordered on the criminal."

The next day, Goodwin emailed Hicks, Brusuelas, and Clayman, stating, "Reports from this past week suggest that . . . BIC AU [authorized user], Dr. Taswell, has lost his ability to be objective ¶ . . . ¶ What is the best way forward in a whistleblower situation if we need to find a new AU[?]" Goodwin testified the e-mail reflected his decision at that time to not renew Taswell's employment contract. Goodwin explained that he believed Taswell was no longer objective because he was losing his temper, not listening to others, and refusing to interact with and review protocols from Potkin.

On March 22, 2012, Taswell, Dr. Ed Robinson (the RSC chair), Richard Mannix, and Rocky Dendo did a walk-through inspection of Mukherjee's new laboratory. Taswell had no jurisdiction over the laboratory. Robinson and Mannix, however, had authority to enter the laboratory.

During the inspection, Taswell took photographs, which he later sent to the California Department of Public Health.

In response to the March 22 inspection of Mukherjee's laboratory, UCI decided to place Taswell on paid administrative leave, effective April 2, 2012, while the university investigated the incident. This action was taken because Taswell had entered Mukherjee's lab without authorization or advance notice and despite having been instructed by Arias not to conduct any investigation.

On April 2, 2012, Goodwin and Brusuelas met with Taswell to inform him of the decision to place him on paid administrative leave. Taswell was provided with a letter notifying him that he was being placed on leave while the University investigated his unauthorized entry and access to Mukherjee's laboratory. At that meeting, Goodwin and Brusuelas also informed Taswell that his six-month contract would not be renewed after it expired on June 30, 2012. Taswell stayed on paid administrative leave through the end of his appointment term.

DISCUSSION

I.

LAW OF THE CASE DOCTRINE

In the prior appeal, a panel of this court reversed an order granting summary judgment on the ground of lack of triable issue of material fact as to the causal connection between his protected activity and adverse employment actions. This court stated: "The record contains evidence supporting a finding of pretext sufficient to create a triable issue of material fact, including: (1) Taswell's protected activity in his disclosures to [UCI] and to federal and state authorities that occurred in mid-February through March; (2) on April 2, he was placed on leave and informed his contract would

9

not be renewed; (3) one of [UCI]'s reasons for taking these actions was that Taswell refused to do his job but Taswell produced evidence he tried to perform his job duties and was prevented from doing so; (4) another reason offered for the Regents taking these actions was that Taswell had refused to cease investigating the problems at the brain imaging center but evidence showed Goodwin told Taswell to continue to look out for the safety of the community; (5) after [UCI]'s independent investigator found Taswell had not entered Mukherjee's laboratory without authority, Taswell was not reinstated; (6) evidence that Taswell had interpersonal issues was challenged by evidence that he had behaved appropriately and further by evidence that others were employed by [UCI] who were known to be challenging to work with; and (7) Goodwin stated that he had been in favor of Taswell's appointment as a clinical professor but changed his mind and decided to not renew his contract sometime between March 15 and 16, and it was on March 16 that Hamrick sent Goodwin an e-mail informing him about Taswell's report of safety violations to the radiation safety committee at its monthly meeting." (*Taswell, supra,* 23 Cal.App.5th 343, 365–366.)

Although Taswell acknowledges the prior decision did not rule on the admissibility of any of the enumerated pieces of evidence, he argues it ruled on relevance and materiality as to pretext. Thus, he contends, under the law of the case doctrine, the trial court was barred from excluding evidence, such as the investigator's report finding his entry into Mukherjee's laboratory was not unauthorized. We disagree.

"'The doctrine of "law of the case" deals with the effect of the first *appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of

10

the same parties in any subsequent retrial or appeal in the same case.'" (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491, quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 895, p. 928.) "The rule is not invoked where the sufficiency of the evidence necessary to sustain the judgment depends on the probative value or effect of the evidence itself, and the evidence in the second trial is changed. [Citation.] Similarly, the doctrine does not apply to points of law that might have been, but were not determined on the prior appeal." (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 302.) Here, the prior decision did not address the admissibility of any particular piece of evidence. Thus, any evidence identified in the prior opinion is subject to motions in limine to exclude the evidence based on grounds such as Evidence Code section 352, where the trial court may exclude evidence whose probative value is substantially outweighed by its prejudicial effect.

## II.

### EVIDENTIARY RULINGS

Although the law of the case doctrine does not apply to the trial court's evidentiary rulings in this case, nevertheless, we agree with the reasoning of the prior court when it comes to the exclusion of certain evidence. Specifically, we agree that a categorical exclusion of evidence that postdates the adverse employment actions in this case is erroneous. Although evidence of acts or events that occurred after the adverse employment actions cannot affect those actions, they can be used to infer retaliatory animus by showing pretext. (Cf. *Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 980 ["In some circumstances, post-termination [evidence] is relevant to the employer's state of mind before

11

termination"].) Thus, acts or events that occur after April 2, 2012, can be excluded, but only on a case-by-case basis.

"Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion." (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.) "'The burden is on the party complaining to establish an abuse of discretion.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) We turn to the excluded evidence.

A. *Investigator's Report of March 22, 2012 Inspection of Mukherjee's Laboratory*

After placing Taswell on leave for the stated reason of his unauthorized access of Mukherjee's laboratory, UCI retained the Van Dermyden Allison law firm to investigate the March 22 incident. On June 25, the firm issued a confidential report finding that Taswell's entry into the laboratory was not unauthorized. The investigator concluded that although "[o]ne can debate whether Dr. Taswell's entry into the lab was outside the scope of his authority as the Authorized User of . . . [BIC]," Taswell's access to the lab was appropriate because he entered under the authority and permission of other UCI officials who had authority to enter and access the laboratory.

At trial, when the parties discussed the admissibility of the investigative reports, the trial court stated it did not believe any report written after April 2, 2012 (the date Taswell was placed on investigatory leave and was informed his employment contract would not be renewed) "is going to be relevant" and "it would take up too much time," and thus, "it would be inadmissible under [Evidence Code section] 352." However, the actual factual content of the reports would be admissible if it pre-dated April 2.

Taswell contends the trial court erred in excluding the investigatory report. For the reasons stated above regarding post-termination evidence of pretext, we conclude the court erred in finding the evidence not relevant. However, Taswell has not shown the error was prejudicial. During trial, he elicited testimony that Robinson and Mannix had authority to enter Mukerjee's laboratory. He also testified that entry into the laboratory was Robinson's idea. Thus, the exclusion of the Van Dermyden Allison investigatory report was not prejudicial. (See, e.g., *Finn v. G.D. Searle & Co.* (1984) 35 Cal.3d 691, 703–704 [exclusion of evidence was not prejudicial where excluded evidence was cumulative].)

B. *FitzMaurice Investigative Report*

As noted above, Arias assigned FitzMaurice to investigate Taswell's claims he had been denied access to data he needed to perform his duties and UCI official did not respond to his denial-of-access concerns. On November 1, 2012, FitzMaurice issued a report substantiating Taswell's claims that BIC personnel, including Potkin, had denied him access to two data servers, but did not substantiate his claim UCI officials failed to act on his concerns.

Taswell argues the trial court erred in excluding this evidence for the same reasons it excluded the Van Dermyden Allison investigatory report. Similar to the court's ruling on the Van Dermyden investigatory report, we conclude it was error to exclude the report. However, there was no prejudice. First, similar evidence was elicited at the trial. Second, this investigatory report undermined the retaliation claims because the people involved in the adverse employment decisions were not the people who denied Taswell access to the data servers. Rather, the report reaffirmed the trial testimony that decisionmakers such as Goodwin agreed that Taswell was entitled to

13

unfettered access and Brusuelas was specifically tasked to assist Taswell in gaining access. The testimony aligned with the jury's verdict that Taswell engaged in protected whistleblowing activity, but the whistleblowing activity was not a substantial factor in the adverse employment decisions. In summary, there was no prejudicial evidentiary error.

C. *Evidence That Potkin was a Difficult Person to Work With*

Taswell contends the trial court erred in excluding evidence that other doctors also refused to work with Potkin. However, Taswell presents no offer of proof below or on appeal that these doctors were required to work with Potkin as part of their job duties. Additionally, the jury heard testimony that Potkin was difficult to work with. Goodwin testified he informed Taswell about this fact when offering him the job. In sum, Taswell has not shown any prejudicial evidentiary error.

D. *Evidence that Taswell's Success as Authorized User of BIC Was Less Qualified*

Taswell also faults the trial court for excluding evidence that Taswell's successor was not legally qualified due to lack of required training to be an authorized user. We find no prejudicial error. A review of the excluded documents does not show that Taswell's successor did not or could not complete the required 40 hours of training. Moreover, the reason Taswell was not renewed was not because of his qualifications but because of his anger issues, impatience, and unwillingness to work with BIC personnel. Thus, there is minimal probative value which is substantially outweighed by likelihood of misleading the jury and confusing the issues.

E. *Precluding Mannix from Opining About Taswell's Renewal*

Taswell contends the trial court abused its discretion in precluding him from eliciting testimony from coworkers about his personality

14

and job performance. But the only claim of error with a record citation is that he was precluded from asking Mannix if he would recommend Taswell be renewed, while The Regents were allowed to elicit testimony from Hamrick that she would not recommend renewal. Our independent review of the cited record does not show the court precluding Mannix from being asked the renewal question. The parties' arguments do reflect that Hamrick had been asked for her recommendations about other potential candidates to be an authorized user at BIC, whereas Mannix has not. Additionally, it is undisputed that Mannix was not among the decisionmakers on the adverse employment actions. Accordingly, we conclude Taswell has not met his burden to show prejudicial error. (See also *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record"].)

F. *Exclusion of FDA Correspondence*

Taswell contends the trial court erred in excluding: (1) a May 3, 2012 correspondence from the FDA noting 19 objectional conditions and practices following inspections on April 26, April 26, May 1, May 3, 2012; and (2) a May 9, 2012 written response by Mukherjee agreeing with the observations and setting forth applicable corrective or preventative actions. Taswell claims the court's exclusion of this evidence prevented him from responding to trial testimony that BIC has been found compliant by the California Department of Public Health (CDPH), which undermined his whistleblowing claims. We find no prejudicial error. The FDA correspondence is not responsive to the trial testimony because the inspections were

15

conducted by different agencies, at different times. Moreover, the FDA's findings are not probative of pretext because lack of actual safety violations was not a reason given for the adverse employment actions. The FDA findings might be probative of whether Taswell engaged in whistleblowing activity, but the jury found Taswell had engaged in whistleblowing activity.

G. *Second PowerPoint Presentation*

Taswell argues the trial court erred in excluding the second PowerPoint presentation prepared by Karimi detailing his concerns about BIC. Taswell fails to explain what evidence in the second PowerPoint was not presented to the jury by the trial testimony or conveyed by the first PowerPoint presentation. Additionally, the second PowerPoint presentation was submitted to show Taswell had engaged in protected whistleblowing activity, but the jury found in his favor on that element of his whistleblowing claim. Thus, Taswell has not shown a prejudicial evidentiary error.

Finally, in his reply brief, Taswell argues for the first time that the cumulative effect of the multiple evidentiary errors deprived him of a fair trial and warrants reversal. (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32 ["[u]nder the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial"].) "We will not ordinarily consider issues raised for the first time in the reply brief." (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275.) We decline to consider the cumulative error claim here because the only argument for cumulative error presented is that the exclusion of evidence allowed The Regents to paint Taswell as a paranoid delusional malcontent who simply made up problems. But the jury verdict shows the jury did not find, at the minimum, that Taswell was delusional and

16

simply made up violations of law or regulation at BIC. Thus, no reasoned argument supports the cumulative error claim.

DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.


DELANEY, J.


WE CONCUR:


MOORE, ACTING P. J.


SCOTT, J.

17